## Vanartsdalen *versus* Same, and Cornell's Appeal.

A grandfather cannot, by his will, appoint a guardian of the persons of his grandchildren in derogation of the right of the father, but he may devise an estate to them on condition that a certain person be their guardian, and he may commit the management of the estate to a person indicated in the will: and if there be a gift to the father in the will, and he submits to it, and enjoys the bequest, the Orphans' Court should not afterwards appoint a guardian, on his application, to the prejudice of the interests of his children.

ERROR to the Common Pleas of *Bucks county*, and also an appeal from the decree of the Orphans' Court.

An ejectment had been brought in the name of Rachel Vanartsdalen and others, minor children of Jane Eliza Vanartsdalen, de-

[Vanartsdalen *v.* Same, and Cornell's Appeal.]

ceased, by their guardian, David Cornell, now plaintiffs in error against George Vanartsdalen, defendant in error.

Adrian Cornell died in 1841, having made his will, in which *inter alia,* it was provided,

"I give, devise and bequeath to the children of my daughter, Jane Eliza Vanartsdalen, the farm of one hundred and ten and a half acres of land, lately purchased from the administrators of the estate of Jacob Vanartsdalen, deceased, lying in Southampton township, bounded by lands of John Gregg, and Asa Worthington, and the Attleborough and Buck road, &c., which farm I give, devise, and bequeath to the children of my said daughter, Jane Eliza Vanartsdalen, after the decease of their mother—*subject to the payment of two thousand dollars, together with the five per cent. per annum interest for the same, from the time of my decease until paid, said devise subject also to the maintenance of my said daughter, Jane Eliza Vanartsdalen, during life; my executors hereinafter named to be guardians for the children of my said daughter, Jane Eliza Vanartsdalen, during their minority, and I do hereby nominate and appoint them for that purpose;* my executors likewise to have the care and superintendence and the letting of said farm, and to see that the timber be not wasted, and give directions for repairing the fences, and all necessary repairs of the buildings, the expenses to be defrayed out of the rent, and to see that none but the decayed and dead timber be cut, which they are to point out, the tenants to find their own firewood. It is further my will, that my daughter, Jane Eliza Vanartsdalen remain on my said farm during life, and to pay a moderate rent for the same; but if it shall so happen that my said daughter shall become very infirm and helpless, then, and in such case, my executors are to deduct out of the rent any sum which she shall stand in need of, if it shall amount to the whole of the rent. It is further my will, that whatever sums of money my executors shall receive as rent, over and above the repairs of the farm and buildings, shall by them be entered as a credit in part pay of the two thousand dollars and its interest, which her children are charged with on the land; and if it shall so happen that my said daughter shall be enabled to pay the whole debt, then she is to have the farm, rent free, except the keeping it and the buildings in good repair during her life."

He appointed his son, David Cornell, executor of his will. Will dated 28th December, 1833.

George Vanartsdalen and Jane his wife, the daughter of the testator, remained in possession of the premises during her life, without paying any rent. She died on the 28th May, 1843. After her death, George Vanartsdalen, with whom the children lived upon the farm, refused to become a tenant and pay rent. David Cornell, as guardian of the children, brought an ejectment against Vanartsdalen, on the 17th day of July, 1843. At this

time, the charge upon the land had accumulated to about $2400, and the Orphans' Court of Bucks, on the 15th day of September, 1843, directed David Cornell, the guardian, to raise this sum by mortgage upon the premises, which was done. The children had no other property whatever. The ejectment was tried in the Common Pleas of Bucks, on the 18th day of September, 1845, when the court decided that the action was brought improperly, inasmuch as it should have been brought in the name of David Cornell, as executor, and not as guardian. This decision was reversed, and the case was arbitrated by the plaintiff, and an award made for plaintiff. From this award Vanartsdalen appealed, and C. W. Biles was the surety in the recognizance upon the appeal. The case was several times on the trial list, and particularly at September term, 1848. When the case was then called, on the 11th of September, 1848, it was said by the defendant's counsel, that the case had been discontinued by the guardian of the children, Charles W. Biles. It then appeared that upon the petition of Vanartsdalen, Biles had been appointed guardian for two of the children; and one, having arrived at the age of fourteen, chose Biles for her guardian. On that day, Biles filed a paper in the prothonotary's office of Bucks county, directing the said action of ejectment to be discontinued.

As soon as these facts were ascertained, the attorney for David Cornell, the guardian, obtained in the Orphans' Court a rule upon the said Charles W. Biles, to show cause why the said appointment should not be revoked and the said C. W. Biles dismissed from his guardianship; and in the Common Pleas obtained a rule to strike off the discontinuance. In both cases, upon the allegation that the whole proceeding was a fraud upon the children.

It was alleged that George Vanartsdalen was insolvent, and that a *scire facias* had been issued on the mortgage.

The court, KRAUSE, J., dismissed the rules taken in the Orphans' Court and Common Pleas.

It was assigned for error that the court erred in not striking off the discontinuance directed to be entered by C. W. Biles.

That the court had not power to appoint another guardian for these children, without notice to and removing the guardian appointed by the will.

And that the facts in the case show such misconduct on the part of Biles, as requires the court to remove him.

The case was argued by *J.* and *E. J. Fox*, for plaintiffs in error. —That a grandfather may give his estate to his grandchildren on condition that a certain person be their guardian; and if the father do not submit to the will, the court will make the father's opposition work a forfeiture of his son's estate: *Ambler* 306, Blake *v.* Leigh.

[Vanartsdalen *v.* Same, and Cornell's Appeal.]

The court may name a guardian to a natural child, and the court will appoint unless objection appear: 4 *Com. Dig.* 269. 2 *Barr,* 312, was also cited.

*Ross, contra.*—That the appointment of a guardian by the will was a nullity; that none but the father could appoint: 1 *Roberts on Wills,* 184; 3 *Atk.* 519.

The opinion of the court was delivered by

ROGERS, J.—The act of 8th April, 1833, *Dunlop* 571, an act relating to last wills and testaments, provides, That every person competent to make a will, being the father of any minor child, unmarried, may devise the custody of such child, during his or her minority, or for any shorter period. From the words of the statute, an inference arises that no person, except the father, has authority to exercise that right, and such is the construction of the statute, Charles 2, ch. 21, sec. 8. Thus, it is ruled in *Ex parte Edwards,* 3 *Atkyns* 519, that the *mother's* appointment of a guardian to her son by will is void, the statute confining the power of appointing a testamentary guardian to the father. So far as the custody and care of the person of the infant is concerned, it cannot be doubted that a testamentary appointment by a grandfather, mother, or stranger, is simply void. But although a grandfather may not appoint, under the statute, a guardian for his grandson, in derogation of the unquestioned right of the father, yet there is nothing to prevent him from giving his estate to him on that condition. Thus, it is said, in Blake *v.* Leigh, *Ambler* 306, the grandfather has no power to appoint guardians of his grandson, it being a right vested in the father. But any one can give his estate on what conditions he pleases; and the father, in this case, submitted to the conditions of the will. There are instances where a grandfather has given his estate to his grandchild, and appointed guardians of his estate and person; and if the father did not submit to the will, the court has made the testator's opposition work a forfeiture of the son's estate. But if there is any gift to the father in the will and he submits to it, the court directs and appoints a guardian on his submission. In the present case, the court has interposed, after the father had waived his parental right; therefore, there is no ground to alter what was done with the consent of all parties.

Even conceding that the testator has appointed a guardian for the persons of his grandchildren, as well as a trustee or curator of the estate devised, yet the appointment would be good, inasmuch as the father has submitted to the will by an enjoyment of the estate devised, in right of his wife, during her life. For it is only since her death that he has acted in opposition to the will. But be this as it may, here the testator devises an estate to his grand-

[Vanartsdalen *v.* Same, and Cornell's Appeal.]

children, and, for satisfactory reasons best known to himself, chooses to commit the custody and management of it to his own son, instead of to his son-in-law. It does not need the authority of Lord HARDWICKE for the position that any one can give his estate on what conditions he pleases.

It is plain the testator does not mean to interfere with the natural right of the father to the custody and care of his children. All that is intended is to commit the management of the estate to his executors, who are appointed guardians of the children. It is of no sort of consequence that he designates them as guardians, rather than as trustees or curators of the estate for the benefit of the infants. The will must receive such a construction as is beneficial to the minors, at the same time carrying out the intention of the testator. The disposition in the will does not require the assent of the father, as none of his rights are affected by it, nor is it in his power to defeat its provisions, or, by any opposition, work a forfeiture of the estate, as perhaps might be the case if the grandfather had undertaken to deprive him of the care and management of his children. What right then has he to complain, when a grandfather or mother, or even a stranger, devises an estate to his children, coupled with a condition that its care and management shall be intrusted to another rather than to him.

The Orphans' Court have disregarded this distinction. They have treated the appointment by the grandfather as null and void, and have proceeded to appoint a stranger as guardian, without any notice whatever to the testamentary guardian. But so far from being void, it is not even voidable, except on proof of fraud or gross mismanagement, or some personable disability of the guardian. This we think altogether irregular and erroneous, and for this reason the proceedings in the Orphans' Court must be reversed.

The testator devised a farm in Bucks county to his daughter, the wife of George Vanartsdalen, for life, and, after her death, to her children in fee. He appointed David Cornell, his son, executor of his will and guardian of his grandchildren, and provided that $2000 should be a charge upon the land, to be paid by the children, unless a moderate rent, which he directed his executor to charge to his daughter, should sink this sum. George Vanartsdalen and his wife remained in possession of the premises during her life, without paying any rent. The wife died, and after her death, George Vanartsdalen, with whom the children lived on the farm, refused to become a tenant and pay rent. David Cornell, as the guardian of the children, brought an ejectment, as he was bound to do, against Vanartsdalen. The ejectment was tried in the Court of Common Pleas, and the case being arbitrated, an award (from which the defendant appealed) was made for the plaintiff. C. W. Biles was the surety in the recognizance on the appeal. The case was marked for trial at the Sept. term, 1848,

and when called, on the 11th Sept., it was said by defendant's counsel that the case had been discontinued by the guardian of the children.   It then appeared that, on the petition of Vanartsdalen, Charles W. Biles was appointed guardian for two of the children, and one, having arrived at the age of fourteen, chose Biles for her guardian.   On the same day, Biles filed a paper in the prothonotary's office of Bucks county, directing the action of ejectment to be discontinued.   After this history of the case, it is impossible to shut our eyes to the fact that this whole proceeding, in the Orphans' Court, and in the Common Pleas, was concocted in fraud, a mere scheme or contrivance of Biles and Vanartsdalen, entered into with the object and intent of enabling the latter to retain possession of the estate, without paying any rent ; the inevitable result of which will be to deprive the children of all benefit from the bounty of their grandfather, and, in fact, to set aside his will.   For if no rent is paid, and applied to the extinguishment of the charge on the estate, as is directed by the will, the accumulation of the debt by accruing interest must necessarily absorb the whole estate, and leave the children destitute of any property whatever.   This, of itself, would be sufficient to induce the court to lay their hands upon it and arrest the proceeding.   What right had Biles to discontinue the suit ?   He had nothing to do with the estate devised to the children.   The testator had thought proper to intrust that office solely to another, who was then pursuing his duty, by an action of ejectment to recover the possession of the property from a person who would neither surrender it nor pay rent for it.

Whether raising the money charged on the land, by mortgage, was right or wrong, it is not the time now to inquire, as the mortgage is not before the court.   We are therefore of the opinion, that the court erred in refusing to strike off the discontinuance directed to be entered by C. W. Biles.

It is ordered that the decree of the Orphans' Court be reversed, the discontinuance of the ejectment be stricken off, the cause reinstated, and *procedendo* awarded.