THURMOND *et al. vs.* FAITH.

[This case was brought forward from the last term, under §4271 (a) of the Code.]

(1.) A deed of gift, conveying realty to certain minors prior to the adoption of the Code, contained the following clause : " Provided that it shall be lawful for the legal guardian of said parties, they being all minors of tender years, to sell and dispose of said lots or parcels of land, or either of them, whenever, in the discretion of such guardian, the same shall be necessary for the support, maintenance and education of the parties of the second part : "

*Held*, that under such deed, the guardian had power to sell at private sale without any order from the ordinary.

(*a*.) To a suit by such minors for the land, a plea to the effect that the guardian, acting in good faith, under the power contained in the deed, and for the purposes therein named, sold to defendant, who also acted in good faith, this property, the rental of which was small, and received in exchange therefor other property producing much larger rent, and that from the proceeds of the latter the minors had been supported and educated, was good, and a demurrer thereto was properly overruled.

2. Under the power contained in the deed above stated, the guardian had authority to exchange the land therein conveyed for other property. Such transaction was, in effect, a sale and receipt of payment in land instead of money.

3. The only possible relevancy of the testimony rejected would have been to show *mala fides*, and there being nothing to that effect, the testimony was properly withdrawn from the jury.

February 20, 1883.

Guardian and Ward. Title. Minors. Powers. Be-
fore Judge HILLYER. Fulton Superior Court. April
Term, 1882.

To the report contained in the decision, it is necessary
to add only the following, in connection with the third
division thereof:

The following evidence, which had been introduced by
the plaintiffs on the trial of the case, was withdrawn from
the jury by the court as being irrelevant: From evidence
of Mrs. Elizabeth Hughes: " In August, 1866, I and these
children lived on the lands in dispute, holding them under
the deed mentioned by me above. Mr. Faith came to me
to know if I would sell the place. He said that my brother
said he thought I would trade. Mr. Faith came to me a
number of times about the trade. He proposed to swap
with me a place in Henry county, which he said would
suit me. My father said I ought to get an order from
the ordinary, but Mr. Faith said it was no use, as I had
the matter in my own hands. I told him Mr. Pittman
said I would have to get an order, for I could not sell
wood without an order. We decided to trade, and started
to Atlanta to make the deeds. We came on by the city
all, and met Mr. Pittman after passing it. Mr. Faith
and my father were with me. I said that I owed Mr.
Pittman some money, and asked him if I had better not
get from him an order to sell the place. Mr. Faith said
to me to say nothing about the order, but just pay Pitt-
man what I owed him. We were going to Mr. Doane to
have the deeds drawn. Mr. Faith said he would be a good
man to draw the deeds. It was his selection. I had never
seen Mr. Doane before. We found Mr. Doane, I think,
at a private house, about where Broad street is. Don't
remember that any other person was there. Don't re-
member what was said to Mr. Doane. We told him our
business and he drew the needs. Don't know whether
Mr. Doane expected us or not. When we got there my

remembrance is that Mr. Faith said we had come to get the deeds drawn. I did not meet that day with anybody named Wallace. My father and myself did not leave the house until the deeds were drawn. The deeds were signed at the city hall. In addition to the land in Henry county, I got from Mr. Faith a couple of hogs and twenty bushels of corn. I think it was not more than five or six weeks between the time Mr. Faith proposed the trade and the time it was made. He was there a good many times before we traded. I told him several times there ought to be an order. He said he had talked to other parties and they said it would be no use. He did not say whom he had talked to. I had been on the Fulton county place about six years before the trade. It was very well timbered. Some of the timber had been cut down. I had had some cut and sold for support, taking it from the breastworks, etc. Mr. Faith said it would be best for the children for me to trade; that I could make a better living on the farm, send them to school better, etc. Up to the time of the trade, myself and the children had lived on the place and got along comfortably; as well as we have in Henry. After the deeds were drawn, we went to the city hall, and while there saw Mr. Pittman. Mr. Faith was present. Mr. Pittman asked me why I had sold without an order. I said to him that Mr. Faith had told me it was not necessary. He asked me why I had not mentioned it to him in the morning when I had seen him, and he could have told me better. Mr. Faith said he was satisfied with his deed and thought he had a good title. Mr. Faith was present and heard what Mr. Pittman said."

From evidence of John T. Hall : " I am engaged in the real estate business. I am, to a certain extent, acquainted with the value of real estate in and around Atlanta. I engaged in the real estate business eleven years ago, and, with the exception of three years, have been in the business ever since. I know the place where Mr. Faith lives, the whole tract as being 100 acres. Its value in 1866,

without the improvements upon it, ought to have been fifty dollars per acre."

From the evidence of Jesse N. George: "I know the place where the Thurmond children live in Henry county; have known it for twenty years. The land, in 1866, was worth $2,000.00."

From the evidence of B. F. Pattillo: "I know the lands there that Mr. Faith exchanged to Mrs. Thurmond. In the fall of 1866, because of the fear of confiscation and scarcity of money, land was low. The land mentioned was worth then $1,200 to $1,500. It is worth now about ——."

From evidence of Jno. A. Doane: "I wrote the two deeds, —that made by Mrs. Thurmond, guardian, to Mr. Faith, and that by Faith to Mrs. Thurmond, as guardian. It was done at the instance of Mr. Faith. Some days before the writing of the deeds, Mr. Faith had spoken to me as to drawing them; told me of the trade he was to make with Mrs. Thurmond and the character of the deed under which Mrs. Thurmond held the land. She was to let Faith have as guardian of her children. I had never seen Mrs. Thurmond up to the time when she came with Mr. Faith to the house of Dr. Boring, in the city of Atlanta. When the deeds were drawn, Mrs. Thurmond had very little to say: After reading the deed under which Mrs. Thurmond was holding the property in Fulton county, which she was to exchange for a farm in Henry county, I did not know but what there might be some trouble when the children of Mrs Thurmond should come of age, so I recited the whole transaction in the deeds I drew. Mr. Faith understood well the character of the deed under which Mrs. Thurmond was holding the land in Fulton county. Mr. Faith had agreed with me as to paying me for my services in the preparation of the deeds, and I think it was understood Mrs. Thurmond was to pay half the expense."

From the evidence of Daniel Pittman: "In 1866, I was the ordinary of Fulton county. Mrs. Thurmond was the

guardian of her children, and as such had the possession and management of the land in Fulton county, which had come from the grandfather of her children. Mrs. Thurmond had been acting under my direction as ordinary, in the management of their property, and had gotten orders for the sale of wood. When she had agreed to sell the land to Mr. Faith and had informed me of it, I expressed surprise that she had not gotten an order for its sale, when she said that Mr. Faith said it was unnecessary, etc. I think Mr. Faith was present at this conversation, but am somewhat uncertain about it. The land in question was poor land and the timber had been largely cut from it. Think at the time, twenty to twenty-five dollars per acre would have been a fair price for it."

The court also withdrew from the jury the deed made by John F. Faith to Mrs. Narcissa E. Thurmond, as guardian, 24th of August, 1866, in which were recited the terms upon which the sale and exchange of lands between the parties had been made, as being irrelevant.

CANDLER & THOMSON, for plaintiffs in error.

L. J. GARTRELL ; E. N. BROYLES, for defendant.

CRAWFORD, Justice.

1. The plaintiffs in error brought this suit to recover of the defendant two tracts of land containing one hundred and one and one-fourth acres. They rested their title on a deed made to them whilst minors by their grandfather. The defendant claimed title under the same deed, and another made to him by the mother and legal guardian of the plaintiffs.

The deed to the plaintiffs in error was made in April, 1862, and after conveying the land to them in fee simple, contains the following clause : "Provided, that it shall be lawful for the legal guardian of said parties, they being all minors of tender years, to sell and dispose of said lots

or parcels of lands, or either of them, whenever, in the discretion of such guardian, the same shall be necessary for the support, maintenance and education of the parties of the second part."

In February, 1863, Mrs. N. E. Thurmond, the mother, was appointed the guardian of these minor children, and in August, 1866, conveyed the land in question to the defendant in error, receiving therefor another tract of land containing two hundred and two and a half acres. The parties exchanged possession, and have so continued since the year 1866. The defendant filed a special plea in which he averred that the power contained in the original deed to the plaintiffs in error, authorizing their guardian to sell and dispose of said lots or parcels of lands, or either of them, was ample and complete, whenever, in the discretion of such guardian, the same should be necessary for the support, maintenance and education of the said minors. He further averred that the deed to him was made by the said guardian in pursuance and execution of the power given in said deed, and in the execution thereof, she acted in good faith, and did that which, in her discretion, she believed necessary for the better support, maintenance and education of the plaintiffs; that the annual rents and profits of the land sued for were worth only $50.00, whilst those which she received were worth $300.00, and furnished a suitable and comfortable home for the plaintiffs, and from the proceeds of which they have been educated and supported ever since; and that he traded for the land in good faith with the guardian, after she had been legally and regularly appointed as such by the court of ordinary.

To this plea the plaintiffs demurred on the ground that the facts therein set forth constituted no legal defence to the action, which demurrer was overruled by the court, and the plaintiffs excepted.

Do the facts set forth constitute a legal defence to the plaintiff's action? It is insisted that they do not, because the sale was a private sale by a guardian of minors legally

appointed, and made without an order of the ordinary, and because, further, it was an exchange of the land of the wards for the land of the defendant.

Without reciting again the power given under the deed conveying the title of the land to the plaintiffs, it will be remembered that it was clearly and distinctly conferred upon the guardian without intimating the necessity of an order of the court of ordinary. Doubtless it was especially so conferred to avoid the expense and delay attending the granting of such an order. To sell the land of a ward, the guardian must have the authority to sell before he is allowed to do so. The grantor in this deed, when conveying the title to the minors, also conferred the power on the guardian to sell, whenever, in the discretion of such guardian, the same should be necessary for the support, maintenance and education of the wards, and not whenever the ordinary, in his discretion, should see fit to grant the power.

The guardian had the right to sell this land at private sale, the deed creating the power having been made before the adoption of the Code, even admitting that it was affected thereby.   38 *Ga.*, 583 ; 62 *Ib.*, 341.

2. It is said, however, that it was not a sale, but an exchange of the lands of the wards for the lands of the defendant.   Had the power of the guardian been limited to the sale of the land only, then there might have been some force in the point ; but it must be noted that the guardian is clothed with the power to sell and dispose of, which, as therein used, included not only the power to sell, but the power of disposition, such as was made by the guardian.   Indeed, the transaction was simply a sale with payment in land instead of money, and was not a violation of the trust reposed in the guardian, but in conformity to the power under which she acted.   Of course, a sale by a guardian, such as is provided for by law, must be made as directed, but it can hardly be said that this was anything more than the execution of a power, and the

Thurmond *et al. vs.* Faith.

term guardian was merely used as denoting the person who was to exercise that power.

3. The only other question of law made in this record and urged before us, is that the court erred in withdrawing from the consideration of the jury, the defendant's deed made to the guardian of the plaintiffs, for the land sold her for that in dispute, and the testimony of Hughes, Hall, Pattillo, Doane and Pittman, witnesses who had been sworn upon the trial. There appears nothing in the deed of the defendant to the guardian which is unusual, except the recitation in full of the terms upon which the sale and exchange of the lands had been made between the parties. The testimony of the witnesses contained nothing to throw suspicion upon the good faith of the defendant, unless, perhaps, by a strained construction of a suggestion made by the defendant to the guardian about not getting an order from the ordinary, as the parties met that official on their way to to execute the deeds. But even this remark was made in the presence of the father of the guardian and the grandfather of the children, who came with his daughter and the defendant to town—was with them all the time—present at the making of the deed, and present at the city hall when the conversation took place, immediately after the deeds were drawn, touching the subject of an order by the ordinary for the sale of the land.

The only possible relevancy that the testimony could have had to the case, would have been to show *mala fides* upon the part of the defendant, and there being nothing of that sort therein, there was no error in withdrawing it from the jury.

Judgment affirmed.