LOUISE G. CAMPBELL ET AL. *v*. C. M. MANSFIELD.
ADMINISTRATOR.

[61 South. 593]

1. TESTAMENTARY GUARDIAN. *Who may be appointed. Invalid appointment. Effect. Trust. Performance. Orders of court. Necessity. Testamentary trustee. Fund or property.*

Where the attempt of a testator to appoint a testamentary guardian of his minor children to manage their property and pay them the income for their support, until the children become twenty-one years of age, was ineffectual because they had a living mother, the party so appointed held the property as trustee under the will, charged with the duty of dealing with it as therein provided, and it was unnecessary for him to obtain an order

from the chancery court to apply the income to the support of the children.

2. SAME.

In such case where a dwelling house situated on property held by the testamentary trustee in trust for the children is burned and the trustee collects the insurance, and applies the income from the money to the support of the children, he should be allowed credit for the same, as the burning of the house and the collection of the insurance simply transferred the realty into personalty impressed with the same trust.

APPEAL from the chancery court of Yazoo county.

HON. G. G. LYELL, Chancellor.

Suit by Louise G. Campbell and others, against C. M. Mansfield, administrator. From a decree for defendant, complainant appeals.

The facts are fully stated in the opinion of the court.

*Barbour & Henry,* for appellant.

It was the contention of the appellants that, under this will, W. J. Kirk, who never qualified or attempted to qualify as guardian, had no right to credit on his account presented to the court for any expenditures made in behalf of the children, and it was the contention of the appellees that, under the terms of the will, W. J. Kirk not being permitted under the law to qualify as guardian, and the appointment as guardian not being valid, therefore was, by the instrument, created a trustee of an express trust, with power in trust to hold the property and manage it, and to apply the proceeds thereof to the support and maintenance of the children. The question arose on the bill filed by the appellants asking that the said W. J. Kirk be required to account. The said W. J. Kirk presented his account, showing all amounts collected and expenditures for clothing, board, etc., to the said appellants. In order to properly present the legal questions involved in the case, it is necessary to review briefly a few of the facts.

The said Thomas J. Kirk left, besides his children, a widow, Mrs. Lula G. Kirk, who owned an estate of her own, consisting of three hundred acres. Sixteen months after the death of the testator, W. J. Kirk married the said Mrs. Lula G. Kirk, and the first item on his bill against the children is dated the month of his marriage. The first years of his married life were spent on the land of the children, and in their home, which burned in 1898.

Of course there was no contention that the said W. J. Kirk had a right to qualify as a guardian, because of the fact that the children had a living parent, and it was the contention of the appellants that he occupied the relation of a volunteer, or guardian *de son tort,* and liable to the application of the statute, number 2198, of the Code of 1892, as follows: "If the ward have a father or mother, the court, or chancellor in vacation, shall determine whether the expenses of maintaining and educating him shall be borne by his guardian or not."

The court is familiar with the cases of *Boyd* v. *Hawkins,* 60 Miss. 277; *Darter* v. *Spears,* 61 Miss. 77; and *Ex parte George,* 63 Miss. 143, wherein accounts of guardians for support and maintenance were not allowed, on account of the fact that there was no previous order of court. If the said W. J. Kirk was a mere volunteer, and assumed, without legal authority, to act as guardian of these children, and to collect their money and expend the same, he is liable to them for the amount collected, and has no right to credit for any expenditures made. It was further testified, and there is practically no dispute in the record as to this fact, that the said Mrs. Lula G. Kirk had rents and profits from her land sufficient to have supported herself and her children, all of which were collected by the said W. J. Kirk, and appropriated to his own uses, the said W. J. Kirk at all times being looked to as the head of the family, in full control of all the property belonging to Mrs. Kirk and the children. He managed the same, collected the rents, and accounted to no

one, and, as the stepfather of the children, and husband of Mrs. Kirk, he supported the family.

It is our contention that this case offers equities in favor of the appellants stronger than the ordinary case of a guardian who fails to obtain a previous order of court for the expenditure of sums belonging to minors, for the reason that the said W. J. Kirk, who had no right to qualify as guardian, not only had full sway over all the funds belonging to the children, but over the funds belonging to their mother as well, which funds were sufficient to support them, and that the said W. J. Kirk took his chances on the children being satisfied, and never calling him to account. Unless the said will created a trust estate, with the said W. J. Kirk as trustee, he is certainly liable as a voluntary guardian, and we do not think that the language of the will will be construed by the court to have been sufficient to create an express trust, as contended by appellees.

The leading case on the subject cited by them is the case of *Kellogg* v. *Burke,* 80 N. W. 207. In that case, the following is quoted from the will:

"Third, I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, of every description, to my three children (naming them), to be divided equally between them, share and share alike, and in case either of the children shall die before the age of twenty-one, I direct that the share of her so dying shall be equally divided between the surviving children, share and share alike. Fourth, I nominate and appoint Charlie S. Parke and Risley Tucker to be guardians of the persons of my three children, and Augustus B. Kellogg, George H. Dunston and George C. Miller to be the general guardians of the estate of each of my three children, and I direct that all funds and securities of each of my children shall be received, held and paid out by them jointly as such guardians."

It will be readily seen that the sections quoted are much stronger than the will of T. J. Kirk, and set out

more fully the powers of the guardians; the opinion held that the attempt to make them guardians being invalid, and in view of the fact that a testator had a perfect right to leave his property as he saw fit, constituted them trustees with the power in trust.

We think that, without question, the will of T. J. Kirk does not sufficiently set out the powers of a trustee even to make him any trustee whatever, and under no circumstances do we think that the court would hold that he had a right to go as far as he did.  The will went no further than to appoint him guardian of the children, with the direction that the land was not to be sold until they were twenty-one years of age, but that the proceeds were to be paid to them annually.  Another broad distinction between the will under consideration and that construed in the case cited above, is this:  In that case two men were appointed as guardians of their estate, and the appointments were clear and unequivocal.  "I nominate and appoint," etc., is the language there employed.  In the Kirk will only one man is named as guardian of the persons and estate, and the language used cannot be construed as appointing that one.  "I want my brother, W. J. Kirk, to be their guardian without bond," etc., is the language employed.  It signifies the testator's desire that his brother shall be guardian of his children, not of their estate only, but of their persons as well, for the language is general. It is evident that the writer of the will had in mind an appointment under the statute.  Under sec. 2184, Code 1892, in force when the will was written, when a parent is authorized to appoint, the verbage is:  "Appoint some suitable person as guardian," etc., and the provision is then made in said section that "Such person shall have the same right to control the person and tuition of this child, to manage the child's estate, real and personal," etc., "as a guardian appointed by the court would have," etc.

To our mind there is in the Kirk will no idea other than that of a general guardian.  How a power in trust of their

estate can be carved therefrom passes our comprehension, and we are amazed and mystified that any attempt to that end should be made. After W. J. Kirk married the mother of the minors, he certainly acted as if he were the most general sort of a guardian.

If the court should follow the ruling in the case of *Bingham* v. *Wheeler*, 49 Miss——, reviewed in the opinion above wherein it was held under a will that the clause, "for the purpose of receiving and managing said property was given an appointment as guardian," was absolutely void, it would necessarily be held therefore that the appointment of W. J. Kirk as guardian was void, and of no effect whatever, and that the said W. J. Kirk was therefore a guardian *de son tort*, and liable as such. The authorities on the subject are uniform that minors have the same protection at law from the speculations of a volunteer guardian as from one legally appointed, and of course the reasoning is sound. The case of *Houseal* v. *Gibbs and Patterson*, 23 Am. Dec. 186, holds as follows:

"One assuming to be a guardian of an infant whose property has been sold by order of the court, and receiving and receipting for the proceeds as such, though he was not in fact a guardian, becomes a volunteer trustee, and must account for the funds so received."

The case of *Gilfillen's Estate*, 25 Am. Dec. (N. Y.) 516, and the case of *Davis* v. *Harkness*, 41 Am. Dec. (Ill.)——, hold that a mere stranger or wrongdoer who takes possession of an infant's property may in equity be considered as guardian of the infant, and liable to account as such. In the latter case the volunteer guardian was not allowed credit for expenditures made for support and maintenance. The case of *Bailey* v. *Bailey*, 48 Am. St. Rep. 829, O., holds that if a man intrudes upon the estate of an infant, and takes the profits thereof, he will be treated as a guardian, and held responsible therefor to the infant, in a suit in equity.

The case of *Martins, Administrator,* v. *Fielder,* 82 Va. 455, holds: "Where an administrator takes charge of real estate belonging to infant heirs, he may be treated as *de facto* guardian of the infants, and made to account."

We believe, under the Massachusetts case cited, and under the other cases cited above, it will be held by the court that the said W. J. Kirk was a guardian *de son tort,* and as such liable to account, and that, as such guardian *de son tort,* he is liable for all expenditures made, and that he will be given no credits for any of the funds expended, and that further, under the ruling of *Darter* v. *Spears,* in 61 Miss. 148 he will be liable, not only for all funds collected by him, but, inasmuch as he assumed to act as guardian, he will be liable for what he should have collected, and which due to neglect, were not collected. The learned chancellor, in his decree, failed to make any note whatever, of the contention of the appellants in this case that the said W. J. Kirk's accounts of funds collected was not correct, and his ruling was incorrect in accepting as absolutely true the statement of W. J. Kirk as to the amount of collections actually made.

*E. L. Brown* and *Barnett & Perrin,* for appellee.

The will created an express trust or power in trust.

At common law, no one but the father could appoint by will a guardian to his minor child; under our law, neither father nor mother can do so, if either survive the other. But, at the common law and notwithstanding statutes like ours, the appointment by will of one to receive an estate by such will given to a minor, though denominating such appointee a guardian, constitutes the appointee the trustee of an express trust, if the estate be granted such appointee, and constitutes such appointee the trustee of an express power in trust, if only the control of the granted estate be given such appointee.

*Blake* v. *Leigh,* Ambler, 305, by Lord HARDWICKE; *Fullerton* v. *Jackson,* 5 Johns. Chan. 38, by Chancellor

KENT; *Camp.* v. *Pittman,* 90 N. C. 615, by the highest court of Kentucky; *Varnartsdalen* v. *Varnartsdalen,* 14 Pa. St. 384, by the highest court of that state; *Grimsly* v. *Grimsly,* 5 S. E. 760, by the righest court of Georgia; *Burdick* v. *Kellog,* 80 N. E. 208, by the highest court of New York.

Lord HARDWICKE originated the proposition; Chancellor KENT adopted it; and the highest court of five states have exemplified it; none, save Massachusetts, has denied it; it did so, without consideration. The last case cited reviews all of the other cases, and shows the solitary dissent.

The important results of this proposition are:

First. No formal vouchers are necessary; and proof, sufficient in ordinary cases, is sufficient to establish the right to credits. *Brinkerhoff's Estate,* 26 N. J. E. 157.

Second. The small accumulations, above income, for one or two years, may be used for subsequent necessary expenditures, within the authority of the trustee. *Edwards* v. *Grove,* 2 De G. F. & J. 210.

Third. The mother or guardian of the minors could not have required the payment of the money over to her. *Copps* v. *Hickman,* 97 Ill. 429; *Fullerton* v. *Jackson, supra.*

Fourth. The trustee, in the absence of bad faith, may substantiate his credits claimed by estimates, if necessary. *Clapp* v. *Emory,* 98 Ill. 523.

Fifth. The trustee, if empowered by the trust instrument needs no order or sanction of the court to make expenditures. *Ex parte George,* 73 Miss. 143.

Sixth. Repairs and improvements could be made and credit therefor taken, even though the money therefor be advanced by the trustee. 28 Am. & Eng. Ency. of Law (2 Ed.), 983; *Johnson* v. *Leman,* 19 Am. St. Rep. 71.

Seventh. If credit for repairs and improvements be not allowed, charges for increased rents due thereto cannot be charged. *Fatum* v. *McLellan,* 56 Miss. 342.

Eighth.   The rate of interest chargeable against him is only six per cent.   28 Am. & Eng. Ency. of Law (2 Ed.), 1096; *Fatum* v. *McLellan, supra.*

Ninth.   If the will directs, the trustee may maintain the *cestui que trust,* regardless of the ability of the mother to do so.

That the will created, for the benefit of appellants, an express trust, or express power in trust, cannot be the subject of serious controversy; if the trust, or power in trust was created for the necessary expenditures of them, that the trustee is entitled to credit for board, clothing, doctor bills, necessary spending money, and education cannot be controverted with reason or authority, and this, independently of the survivorship of the mother, or her ability to supply such necessaries. Note Pomeroy, section 1309.   Therefore, does the clause of the will, "I want all the proceeds of the farm paid to my children annually," sufficiently indicate an intention, the pole star of the con struction of wills, to devote the proceeds to such purpose, is the crucial question involved.

The mere devise of the farm carried the proceeds thereof to the devisees; and the clause quoted is meaning less verbosity, unless inserted for some purpose other than to carry the proceeds.   It could serve no other pur pose, except to appropriate the proceeds "annually" to the use of appellants.   If to their use "annually," it must be to their use for annual necessary expenditures, for we must infer that the testator knew the insufficiency of the mother's means, and the inadequacy of the estate devised, or both, to supply luxuries.   The use of "all," in the clause, shows that the anxious father realized the necessity of the expenditure of the proceeds annually. It must be found that such was his intention, and that the expression, "paid to my children annually," must be con strued the equivalent of "expended for them annually," because it would be utter folly to be so literal as to con strue the will, made at a time when death was impending,

a literal direction to pay over to children five to eight years of age, as appellants then were.

There can be no doubt that the testator knew, everyone would know, that the devise of the lands carried the rents and profits, and, therefore, the use of the clause quoted was purposely made. Being purposely made, and no purpose except the one indicated being assignable, it must be inferred, as well as presumed by the law, as a fact, that the testator knew that the law required an order of court to devote the income of an infant to its necessaries, its parent being alive; and, consequently, the clause of the will is an intentional express direction against such requirement, and, unless the law, requiring the order, be a restraint upon the right of alienation, so that one may not "give his property the right of alienation, so that one may not "give his property on what conditions he pleases," the direction must be followed, as Mr. Pomroy's note to section 1309 says.

Further, we must consider that the testator knew the slender income of the mother; we must infer and presume his knowledge of the legal provisions of section 2414; we must consider that, practically, his whole estate was given to his children; we must consider the fact that the clause was made; and, from these considerations, we see that the direction that the proceeds should be expended annually was intended to relieve the mother of the burden of the children's support to the extent of the income. The construction contended for would do violence to manifest solicitude of the testator, both for the children and for the mother. It is not conceivable that the father, with the knowledge of his wife's small estate, devised his entire estate to the children, with no intent to devote its income to their support during minority.

Section 2414 found in the chapter on "Guardian and Ward" merely provides that the court shall determine whether a "ward" having a father or mother living, shall be maintained and educated, not by his trustee, but by his

"guardian." The common law rule is that the mother is under no legal duty to support her minor child, whatever her ability, and statutes changing the common law, it is well settled in this state, must be strictly construed; yet the contention made for appellants is an attempt to extend the section, found in the chapter on guardian and ward, and dealing with that subject by its very terms, so as to change the law with reference to trustees and *cestui que trust,* the power to devise on conditions which please the devisor, and the duty of a mother towards her child, for whose benefit an express trust for maintenance has been created.

That the instrument is the law unto the trustee is a familiar expression in the books, and it would seem that the authority of Mr. Pomroy would not be needed for the proposition that, if the instrument devote the trust income to maintenance, the ability of the parent to maintain is immaterial, but we cite *Bateman* v. *Foster,* 1 Collier, 118, and *Stephens* v. *Lowry,* 2 Yo. & Coll. 87, both of which hold the proposition, where the grandfather, under no duty to maintain, created the trust for his grandchildren, whose father was the trustee and of ability to maintain, and under legal duty to maintain.

Much stronger is this case, where the trust was created by the father, who was under a duty to maintain and where, under our law, he is under duty to provide for his widow, except only in the event she have separate property equal in value to her legal share of his. As said above, the will in this case, was indirectly a provision for the benefit of the mother (she being by the statute bound to maintain her infant children) in that it devotes their income to their support.

Mr. Pomroy's proposition is relied upon by General George and by Judge HARRIS, by brief, in *Ex parte George,* 63 Miss. 143. Referring to the testator, Judge HARRIS says: "If he, being the father, gives them (his children) an estate, and expressly, or by necessary impli-

cation, charges upon the estate so given the expense of
their support, the question of charge or no charge is de-
cided by an authority superior to the statute and the
court of chancery." The opinion of Judge ARNOLD de-
cides the case upon the assumption of this incontroverti-
ble proposition, for he says that the question is whether
or not the provision of section 2111, Code of 1880 (new
Code of 1892, section 2189, Code of 1906, section 2414,
with an exception noteworthy in another connection) "is
dispensed with by the will of W. R. Barksdale." To say
that such question is decisive, was to decide that the will
was the law of the case, and the brief argument of the
court was to the effect that the will was not subject to the
construction placed upon it by Judge HARRIS. We there-
fore find that our court upholds the note of Mr. Pomroy,
by its decision, under the statute invoked by appellants
in this case.

Counsel for appellants seem to contend that, though
Mr. Kirk's appointment as guardian was void, though he
did not attempt to qualify under the will as guardian, he
must be held as a guardian *de son tort,* or the trustee of
the voluntary trust, or guardian *de facto;* and they con-
tend that, in that event, they must be enabled to deny
the trustee credit for all items.

They are mistaken in the consequences of this holding,
as well as in the contention that that holding is the law.
Their own authorities afford no support to them; *Davis*
v. *Harkness,* 41 Am. Dec. 184, holding that the intruder
was entitled to credit for "support and education," to
the extent of the income from, but not "to break in upon
the principal." We have no complaint of this holding;
the "support and education," from income, was all that
the chancellor allowed us. *Van Epps* v. *Van Denson,* 25
Am. Dec. 516, involves no question of allowing credits for
maintainance and education, or other items here in con-
troversy; but the father of his minor daughter was sim-
ply held liable for a legacy and a "black girl's" services,

which he had appropriated. *Housal* v. *Gibbs,* 23 Am. Dec.
186, simply holds that an appointee of the court to receive
the estate of a minor must account for the same, as trus-
tee, and involved no question of what credits he should
have. *Bailey* v. *Bailey,* 48 Am. St. Rep. 826, simply holds
that equity has jurisdiction to compel strangers, assum-
ing charge of a lunatic's estate, to account therefor, dis-
cussing no question of credits at all. The Virginia case
quoted does not seem, from the quotation, to be more in
point.

The decisions, really in point on the question of what
items a stranger, intruding upon the estate of an infant,
more technically spoken of as a "bailiff," or voluntary
trustee," may claim credit for, will be found to hold that
he may have credit for support, education, taxes, and
general items of maintenance. *Beisel's Estate,* 40 Pac.
961; *Alexander* v. *Hillebrand,* 112 Am. St. Rep. 417;
*Dickel* v. *Smith,* 20 S. E. 564; *In re Besondy,* 24 N. W.
366; *Johns* v. *Williams,* 66 Miss. 350.

If the voluntary trustee idea prevail, there is another
principle upon which all necessaries must be credited to
the trustee. That principle is that a minor may be fur-
nished with necessaries, on contract implied by the law,
and his estate held therefor. 16 Ency. of Law, p. 275;
*Epperson* v. *Negent,* 57 Miss. 45. This proposition was
recognized as sound in the cases of *Darter* v. *Spiers* and
*Boyd* v. *Hawkins,* where it was contended by counsel for
the guardian that he might be allowed credit for neces-
saries, without a precedent order, because of this prin-
ciple; but its application was denied in each case, because
the guardian was a guardian *de jure,* and within the
terms of the statute requiring a precedent order.

The denomination of a stranger, assuming control of
an infant's estate as a voluntary trustee, or as *de facto*
guardian, or as guardian *de son tort,* is only an assimila-
tion, for the purpose of a remedy, and such person,
whatever he be termed, is an intruder still. So Mr. Kirk's

appointment, if void, leaves him in the attitude of any person assuming control of the appellant's estate. In view of the fact that the trustee always advanced the appellants his own, and not their funds in his hands, with the expectation of being reimbursed from their income, when received, there is nothing to prevent his being credited with necessaries furnished, and the implications of the Boyd and Darter cases support the view that he may be, notwithstanding a provision for a previous order in the case of a guardian be found.

The reasoning of the Boyd and Darter cases, that to allow the expenditures would be to nullify the statute, cannot apply here, as this is not the case of a *de jure* guardian, due to the omission to do something of him required by the statute, but it is a void appointment—void because of the existence of the mother, and the consequent lack of power in the testator to appoint a guardian *de jure*.

SMITH, C. J., delivered the opinion of the court:

T. J. Kirk, who died in 1893, disposed of his property by will as follows: "My individual land and all improvements thereon I give to my three children, and I want my brother, W. J. Kirk, to be their guardian, without bond, until they are twenty-one years of age. I want all the proceeds of the farm paid to my children annually, but I do not want the land disturbed until they become of age." He then bequeathed certain personal property to his wife, W. J. Kirk, and his three children, and proceeded as follows: "W. J. Kirk to control my children's interest in the personal property in the same way as the real estate." Upon the death of the testator W. J. Kirk took charge of the property referred to in the will, managed and controlled it, and applied the income therefrom to the support of the testator's children until a short time before the institution of this suit, which was instituted against him by these children for an accounting. Neither Kirk

nor anyone else qualified as guardian for these children, nor did he obtain any order of the chancery court authorizing him to expend the income of this estate for their support and they now claim that he is not entitled to credit therefor. The mother of these children, who survived their father, afterwards married W. J. Kirk, and thereafter these children lived with them as a part of their family.

While the attempt of the testator to appoint W. J. Kirk testamentary guardian of his children was ineffectual under our statute, by reason of the fact that their mother was still living, nevertheless it is manifest that he intended that the property devised and bequeathed by him to these children should be managed and controlled by Kirk, and the income therefrom be applied by him to their support. W. J. Kirk, therefore, after the death of the testator and until the children became twenty-one years of age, held the property as trustee under the will, charged with the duty of dealing with it as therein provided. *Black* v. *Leigh,* Ambler, 305; *Fullerton* v. *Jackson,* 5 Johns. Ch. 278; *Camp* v. *Pittman,* 90 N. C. 615; *Bush* v. *Bush,* 2 Duv. (Ky.) 269; *Vanartsdalen* v. *Vanartsdalen,* 14 Pa. 384; *Grimsley* v. *Grimsley,* 79 Ga. 397, 5 S. E. 760; *Kellogg* v. *Burdick,* 187 N. Y. 355, 80 N. E. 208, 13 L. R. A. (N. S.) 288. This being true, it was unnecessary for him to obtain an order from the chancery court to apply the income to the support of these children. The court below committed no error in allowing him credit therefor. We find no error in any of the matters complained of on the direct appeal.

A dwelling house, situated on the land devised to these children, and insured for the sum of seven hundred dollars, burned several years before the institution of this suit. The money for which it was insured was collected by Kirk, and the income derived therefrom applied by him to the support of the children in the same manner that the income from the remainder of the property was.

The court below declined to allow him credit therefor, on the ground that no authority to apply it to the support of the children was conferred upon him by the will. In this the court was in error. The destruction of the house, and the collection of the money for which it was insured, simply resulted in transforming the real property into personalty, without fault on the part of Kirk, which personal property took the place of the real property, and became impressed with the same trust upon which the real estate had been held. Appellants are entitled on this item to recover only their portion of the principal of the seven hundred dollars, each one-third thereof.

The decree of the court below is reversed; and since it appears therefrom that Kyle Kirk has in some manner, not apparent from the other part of the record, dropped out of this litigation, a decree will be entered here in favor of appellants Havercamp and Campbell in the sum of two hundred thirty-three dollars and thirty-three cents each with interest thereon at the rate of six per cent. per annum from the day each became twenty-one years of age.

*Reversed.*