STANDARD OIL COMPANY, Appealing in Its Own Name and in the Name of Certain Others, *Appellants,* v. ST. JOHNS MEHRTENS, Otherwise Known as WILLIAM ST. JOHNS WILMOT, et al., *Appellee.*

En Banc.

Opinion filed October 9, 1928.

Petition for rehearing denied November 13, 1928.

456

*Martin H. Long* and *George C. Bedell,* Attorneys for Appellants;

*Crawford & May,* Attorneys for Appellees.

BUFORD, J.—Appeal in this case is from an interlocutory decree adjudging the equities to be with the complainants and directing an accounting. The salient facts as we gleam from the record and as admitted by counsel are that ''the amended bill attacks a certain deed dated June 20, 1919, by the Guaranty Trust & Savings Bank, a corporation, as executor of and trustee under the last will and testament of Adeline Mehrtens, deceased, to Mary Coachman Burbridge, and prays that plaintiffs may be decreed to be the owners in fee simple of a certain described tract of land in the city of Jacksonville, Duval County, Florida; or that, in the alternative, it be decreed that the said Adeline Mehrtens was the head of a family within the meaning of the constitution and laws of Florida; that she died intestate as to the half of one acre of said land particularly described in the second paragraph of the bill; that upon her death said homestead property inured to John C. Mehrtens as her sole heir at law; that upon the death of said John C. Mehrtens, intestate, the said homestead descended to the plaintiffs as his sole heirs at law; that said homestead be declared and set apart; and that any and all of certain conveyances, mortgages and leases be declared null and void as against the plaintiffs, and plaintiffs be declared and decreed to be the owners of said land set apart as a homestead; and the title of plaintiffs to the lands so declared to be the homestead of said Adeline Mehrtens be quited as against the defendants and each of them, and that the deeds, mortgages and leases through which the defendants or any of them claim title to, or lien upon, or right to possession of said land or any part thereof be declared clouds upon the title of plaintiffs and be cancelled of record.

The bill further prays an accounting of the rents and profits, etc.

The plaintiffs are the children of John C. Mehrtens, a former Pullman conductor. About the year 1903, Mr. Mehrtens married and he and his wife and mother occupied a little cottage on Banana street. About a year later they moved into his mother's dwelling house at 634 Riverside avenue, which stood upon the property involved in this suit, and which had until then been held by a Mr. Strickland under a lease. Mr. Mehrtens and his mother and wife and children continued to occupy this house until his wife left him soon after the birth of their second child about the year 1909, taking both children with her. About two years later the wife returned to Jacksonville and opened a rooming house which she operated about a year, but she never returned to Mr. Mehrtens. She then took up millinery work and had a store in Sanford, Fla. Under date of January 22, 1912, she obtained a divorce from Mr. Mehrtens by a decree which awarded to Mr. Mehrtens the care, custody, control and education of the children. She left the children with her mother-in-law and saw them only on occasion of week-ends and holidays except at Christmas when they were with her for ten days. Prior to the decree of divorce she had a decree for separate maintenance, referred to in the divorce decree, under which she was paid forty or fifty dollars a month, by Mr. Mehrtens' attorney. After the death of Mrs. Adeline Mehrtens in 1917, the children were taken home by their mother with Mr. Mehrtens' consent, the mother in the meantime having married Mr. Wilmot.

There was testimony in behalf of the plaintiffs tending to show that Mr. Mehrtens was addicted to the use of intoxicating liquors; that he worked with more or less irregularity; that a year or two before his mother's death he lost his job with the Pullman Company and that he was

unemployed; that the pocket money of the children came from their mother and grandmother; that his mother paid the household bills, and that upon several occasions when his mother called on him for money he said that he did not have any. There was also testimony that during the years that the children were with their father and grandmother they took directions from their grandmother.

After the death of Mrs. Mehrtens one of the officers of the Guaranty Trust & Savings Bank went out to the house on the property involved in this suit to get Mr. Mehrtens to surrender possession of the property to the bank as executor. Mr. Mehrtens offered no objection to surrendering possession but claimed that a lot of the furniture in the house belonged to him. After some controversy, the furniture was delivered to Mr. Mehrtens and he moved out of the house taking the furniture with him.

The Will is set forth as Exhibit 1 to this bill. The first, second, and third clauses are in these words:

1. I hereby give, bequeath and devise to the Guaranty Trust & Savings Bank of Jacksonville, Florida, a corporation, under the laws of the State of Florida, all of my property, real, personal and mixed, where-so-ever located, in trust, never-the-less for the uses and purposes hereinafter set forth.

2. I hereby direct, authorize and empower the said corporation acting as trustee aforesaid, at its descretion to sell all of my said property and invest the proceeds thereof in first mortgages on real estate in Jacksonville, Florida, or on real estate near or adjacent thereto.

3. I hereby direct said trust company to use and employ the income from said mortgages for the benefit of my son John C. Mehrtens and his two children Marguerite and Saint Johns Mehrtens, Ten ($10.00) Dollars per month shall be paid to each of my said grand-children, and the balance

of said income to be paid monthly to my son, John C. Mehrtens during his lifetime and at his death the entire income shall be used for the benefit and support of my said grandchildren until they are each twenty-one years of age, and the entire capital of my estate shall then be equally divided between them, and said trust be dissolved.

Under date of May 23, 1919, the County Judge of Duval County, Florida, authorized and confirmed the sale of the property in question here to William Burbridge for Eleven Thousand Five Hundred ($11,500.00) Dollars.

The deed recites this order and also recites that The Guaranty Trust & Savings Bank, a corporation, holds the legal title to the described lands as trustee under the last Will of Adeline Mehrtens, deceased, with full power to sell the same.

The decree of the county judge's court is by the bill alleged to have been void for want of publication of notice of application for the order, because forty days did not elapse between the date of the citation issued to plaintiffs and their natural guardian and the day named therein for them to appear and show cause; because the will does not authorize the sale of real estate to pay debts; because of want of jurisdiction in the county judge's court to order the sale of all real estate of the decedent; and because the property was not assets in the hands of the executor for payment of debts of the decedent.

The property involved was appraised November 15th, 1918, at $22,500.00. At the sale in May, 1919, which is being attacked here, the property sold for $11,500.00 less $500.00 as brokerage charged by the executor. The record shows that the proceedings in the county judge's court were as follows:

"On February 3, 1919, the executor filed its petition wherein it is alleged that the will had been pro-

bated, and that it had qualified as executor; that it was authorized and empowered to make sale of the property and invest the proceeds, as provided for in the will; that the estate was indebted to various persons, according to a schedule attached to the petition; that the estate was solvent; that the personal property was of small value, and inadequate to pay the debts; that the petitioner was in possession of all property; that all of the property was unimproved except the property involved in this suit, which was encumbered with a mortgage in the sum of $8,500.00, and prayed for an order appointing a guardian *ad litem* to represent the minors, and an order authorizing the executor to sell all of the property belonging to the estate. (Rec. 19-27.) The schedules attached itemize debts to individuals aggregating $1,178.65 and to itself for advances, not itemized, of $2,092.33.

"A citation to the minors and their natural guardian was issued on February 12, 1919 (Rec. 27), and served in Orange County, Florida on February 15, 1919.

"A guardian *ad litem* was appointed for the minors on February 12, 1919.

"A notice of the executor's intention to apply for the order prayed for in the petition appears to have been published for four insertions, commencing February 1, 1919.

"The guardian *ad litem* filed his formal answer on March 3, 1919.

"On March 3, 1919, the county judge made an order granting all of the relief prayed for in the petition, and appointing James R. Cooper as commissioner to make the sale of the property.

"Cooper published a notice of the sale, to take place on April 7, 1919.

"Cooper appears to have left the jurisdiction of the court and an order was made substituting Maynard Ramsey as commissioner.

"The commissioner filed a report on May 9, 1919, reporting that all of the property of the estate had been sold to the executor for the sum of $1,975.00.

"On the same day the executor filed a further petition, setting forth that it had bid in the property for the estate, and to prevent its sacrifice. This petition alleges that in the opinion of the executor, a private sale of the property would be for the best interests of the parties concerned, and prayed for an order authorizing such private sale.

"On the same day the county judge made an order setting aside the sale made by the commissioner, and authorizing the private sale prayed for by the executor.

"On May 22, 1919, the executor filed a further petition, reporting a private sale of the property involved in this case to one William Burbridge, subject to the mortgage for $8,500.00, for the sum of $3,000.00 (Rec. 60). This sale was confirmed by an order of the county judge dated the following day.

"These proceedings are certified by the county judge to be all the proceedings in connection with the sale of said property of record in his office.

"A deed was made by the executor to Mary Coachman Burbridge June 20, 1919."

It appears that there are only two questions which we are required to determine. The first question is, "Did the will authorize the trustee-executor to sell and convey the

property involved to procure funds with which to pay debts including the charges of the executor for the administration of the estate?" If this question could be answered in the affirmative any further question would become immaterial, but when answered in the negative the next question which arises is, "Were the statutes governing the sale of infants' real estate by executors so complied with as to authorize the executor to make the sale under and by virtue of the order obtained from the County Judge of Duval County."

The will in this case conveyed the property to a trustee for certain stated purposes which purposes were declared in the "Second" and "Third" clauses of the will as hereinbefore quoted.

It may be said that to limit the authority of the trustee-executor to a sale of the property for the purposes definitely stated in the will would be to hold the will invalid and of no effect as against creditors and that as it appeared that the value of the estate was no more than sufficient to satisfy the claims of creditors that the will would be stripped of all force and effect. We concede that this conclusion is not only tenable but is entirely correct. Such conclusion, however, does not lead to a determination that the authority limited by the terms of the language of the will may be enlarged because of expediency and be construed as authority to the trustee-executor to sell and convey the property to pay the debts of the decedent and of the estate. It appears from the language in the will in this case that the trustee-executor was only authorized to sell the property of the testator for the purpose of re-investing the proceeds in certain first mortgages and that the trustee-executor found itself in the position where it was impossible to carry out the provisions of the will because of the existence of unpaid debts of the testatrix.

In Young v. Bradley, 25 U. S. Law ed. 1044, the Supreme Court of the United States say:

"Whatever the language by which the trust estate is vested in the trustee, its nature and duration are governed by the requirements of the trust.

"The language used in creating the estate will be limited and restrained to the purposes of its creation, and when they are satisfied, the estate of the trustee ceases to exist and his title becomes extinct."

It appears to be too well settled to admit of very much argument that an executor acting under a will in making a sale of the property of the testator is generally held to a strict execution of the powers conferred and to effect a valid sale all directions of the power must be complied with. Page on Wills, 2nd ed. 1943, 11 R. C. L. 400; 24 C. J. 161; Taylor v. Calloway, 1 Ohio 232, 13 Am. Dec. 605; McFarlane v. McFarlane 177 Ill. 208; Hammond v. Cronkright, 47 N. J. Equity 447; Porter v. Porter 97 Okla. 231; Heyer v. Heyer 110 Neb. 784.

In Young v. Bradley, *supra*, the Court say:

"The doctrine is well settled that, whatever the language by which the trust estate is vested in the trustee, its nature and duration are governed by the requirement of the trust. If that requires a fee simple estate in the trustee, it will be created, though the language be not apt for that purpose. If the language conveys to the trustee and his heirs forever, while the trust requires a more limited estate either in quantity or duration, only the latter will vest.

"Mr. Perry, in his work on Trusts, supports, by a very full array of authorities, these two propositions

in regard to the construction of instruments out of which trust estates arises:

" '1. Whenever a trust is created, a legal estate sufficient for the purposes of the trust shall, if possible, be implied in the trustee, whatever may be the limitations in the instrument, whether to him and his heirs or not.

" '2. Although a legal estate may be limited to a trustee to the fullest extent, as to him and his heirs, yet it shall not be carried further than the complete execution of the trust necessarily requires.' Perry Tr., Sec. 312. Again he says: 'In the United States the distinction between deeds and wills in respect to the trustee's estate has not been kept up; and the general rule is, that whether words of inheritance in the trustee are or are not in the deed the trustee will take an estate adequate in the execution of the trust, and no more nor less.' Sec. 320.

"The case of Noble v. Andrews, 37 Conn. 346, bears a strong analogy to the one before us in principle, where it was held that a gift to a person in trust for a wife during her life, and to her heirs forever, subject to her husband's courtesy, conveyed to the trustee only an estate for the life of the wife, and at her death the trust ceased.

"This subject is considered and the authorities fully reviewed in the opinion of this Court by Mr. Justice Swayne in Doe v. Considine, 6 Wall., 458 (73 U. S. XVIII 869). 'It is well settled,' says he, 'that where no intention to the contrary appears, the language used in creating the estate will be limited and restrained to the purposes of its creation. And when they are satisfied, the estate of the trustee ceases to exist and his title becomes extinct. The extent and duration of the estate are measured by the objects of its creation'.''

And so it is, that we arrive at the conclusion that in the instant case the will did not vest authority in the trustee-executor to sell and convey the real estate of the testatrix for the purpose of paying debts and that a conveyance of the property executed by the trustee-executor for that purpose was void. The Supreme Court of the United States in Wormley v. Wormley, 5 Law. Ed. 651, say:

"Where the purchase money is to be reinvested upon trusts that require time and discretion, or the acts of sale and reinvestment are contemplated to be at a distance from each other, the purchaser is not to look to the application of the purchase money.

"But wherever the purchaser is affected with notice of the facts, which in law constitute the breach of trust, the sale is void as to him; and a mere general denial of all knowledge of fraud will not avail him if the transaction is such as a court of equity cannot sanction.

"A *bona fide* purchaser, without notice, to be entitled to protection, must be so, not only at the time of the contract or conveyance but until the purchase money is actually paid."

It affirmatively appears from the record that both the original purchasers and the vendees of the original purchasers, who are all made parties to this suit, had full knowledge of the limitations of authority contained in the will and also had notice both by the record existing in the county judge's court and by the recitals contained in the several deeds that the sale by the trustee-executor was not made in conformity with the authority contained in the will or for the purpose for which such authority was expressed in the will, but was made for a different purpose,

that is, to pay the debts of the decedent and to pay the costs and charges of the administration.

Having arrived at this conclusion, it then becomes needful for us to determine whether or not such proceedings were had in the county judge's court as would authorize a valid conveyance of the property by the executor. At the time these proceedings were had the equitable title to the property had passed to the two minors referred to in the will, they being the sole surviving heirs of the decedent. The sale in this case occurred when the provisions of Secs. 2414, 2418, 2421, 2422, 2424 and 2425, Gen. Stats. of Florida, 1906, were in force and effect. We might spend some time in discussing the history and development of these statutes, but we see no good reason to be accomplished by so doing. It will be observed that Secs. 2418 and 2422 are revisions of provisions contained in Chap. 1732, Acts of 1870. Sec. 2421, Gen. Stats. of Florida, was as follows:

"Sale of Real Estate of Infants.—When any executor or administrator shall have the control or management of any real estate the property of an infant and shall think it necessary or expedient to sell the same, it shall and may be lawful for the said executor or administrator to apply either in term time or vacation by petition to the county judge or judge of the circuit court for the county in which said real estate may be situated, for authority to sell the same, and if the prayer of said petition shall appear to the said judge reasonable and just, he may authorize said executor or administrator to sell said real estate under such conditions as the interests of said infant may, in the opinion of the said judge, seem to require. Such authority shall not be granted unless the executor or administrator shall have given previous notice published once a week for four successive weeks, in a

newspaper published in the county where the application is made, of his intention to make application to said judge for authority to sell the same, setting forth in said notice the time and place and to what judge said application will be made. If the lands lie in more counties than one, application shall be made in each county.''

Section 2422 provides as follows:

''Directions in Order of Sale—1. Authorizing Deed to be Made.—The judge in every order granting leave or giving authority to the executor or administrator to sell the land or lands of a decedent shall authorize the commissioner provided for in Sec. 2423 to execute and deliver to the purchaser thereof a deed conveying said land or lands to the purchaser thereof and a deed so executed and delivered shall fully vest in said purchaser the fee simple title to said land or lands, or the full right, title and interest of the estate, and of the heirs, devisees or minors therein or thereto.

''Required Additional Bond.—The judge shall, in every order or decree authorizing such sale, require that the executor or administrator shall execute and file in the court a bond, with surety or sureties, to be approved by the court or judge, in such penalty as the court or judge shall fix, conditioned to duly account for the same according to law.''

Section 2425 provides as follows:

''Adjournment of Sale.—If in any case the public sales authorized hereinbefore cannot take place without a sacrifice of the interests involved in the opinion of the commissioner, he shall be authorized to adjourn

the same, and after giving the notice hereinbefore required, may have the sale at any subsequent day.''

Section 2514 authorized executors and administrators to acquire possession of real estate for the purpose of subjecting the same to the payment of debts and requires that not less than thirty days' notice shall be given by citations directed to persons interested commanding them to appear at a day named not less than forty days from the date of citation. The citation is required to be published for four consecutive weeks preceding the date named therein and the statute further provides for the appointment of guardians *ad litem* to represent any infants' interests. There is no showing made that there was any attempt to comply with the provisions of this section.

In this case we find a petition was filed on February 3rd, 1919. Citation was issued February 12th, 1919. Citation was served February 15th, 1919. The order of sale was entered on March 3rd, 1919. The citation was not published. The order was made only twenty-eight days after petition was filed and only nineteen days after the citation was issued and only seventeen days after the infants were served. It is shown that the date of the order was less than forty days from the date of the first publication of the notice. This petition, however, was not for order authorizing the executor to take possession of real estate for the purpose of subjecting it to the payment of debts, but was a petition for an order authorizing the sale of real estate, already in possession of the executor, for the payment of debts, and, therefore, came within the purview of Sec. 2418, 2422, 2424 and 2425.

The record further discloses that the provisions of Sec. 1425, *supra*, were entirely ignored; that the order was made authorizing a public sale; that the public sale was

had; that the property was bid in by the executor; that the sale was not adjourned but was closed and a report thereof was made and filed by the commissioner. After all this had been done the executor came in and represented to the court that the sale should not be confirmed because the price bid was inadequate. The court granted this part of the petition and that closed the proceedings so far as that sale was concerned. The executor, however, in its petition praying for an order that the sale as made be not confirmed then and there presented a petition for an order allowing the executor to make sale of the same property at a private sale. This was a new petition and was filed without notice to anyone and an order of sale was made thereon without notice to anyone and without the appointment of a guardian *ad litem* to represent the infants. There is no showing in the record that the court in any manner attempted to acquire jurisdiction of the parties under this latter petition.

It also appears that the oath required to be filed prior to the confirmation of sale under provisions of Sec. 2428, Gen. Stats. of 1906, was not filed by the executor. The additional bond required by Sec. 2422 was not given.

In Laflin v. Gato, 52 Fla. 529, 42 So. R. 387, this Court, in dealing with the authority of a guardian *al litem* to bind an infant, say:

"The answer of a *guardian ad litem* will not operate as an appearance for the infant, when the guardian was appointed before service by publication upon the infant had been perfected."

In that case the guardian *ad litem* was appointed in a foreclosure suit. In this case the record shows that the guardian *ad litem* was appointed and his answer filed before the citation was served on the infants, as to the first

petition, and that no guardian *ad litem* was appointed under the petition under which the private sale was made and confirmed.

In McIntyre v. Parker et al., 77 Fla. 690, 82 So. R. 253, this Court held:

"An order for the sale of the interest of an infant in real estate is inoperative and the deed made thereunder void unless the provisions of the law have been complied with which give to the court jurisdiction of the proceeding under which the order is made.

"Sec. 1724 of the Gen. Stats. which provides in substance that the title of any purchaser of real estate who has held possession for five years, when the purchase was for full value, without fraud at a sale made by an executor or guardian, shall not be questioned by any heir or ward upon the ground of any irregularity in the proceeding or conveyances, has no application in the case of a sale by a guardian under an order of a judge who had no *jurisdiction* to make the order of sale."

In McGriff et al. v. Leonard et al., 83 Fla. 695, 93 So. R. 179, this court say:

"The theory of defendants, appellees here, is that a testator may, be a valid will, vest in executors or testamentary guardians named by him power to dispose of property devised by him in such will without regard to statutes otherwise applicable; and that while in this instance the executors had been formerly discharged before the execution of the deed, they were authorized under the express terms of the will, either as executors or as guardians, to sell and convey the property devised, that their conveyance of the prop-

erty is referable to the power possessed by them, and that although it purports to be their conveyance as executors, it should be construed as a conveyance by them as guardians. This doctrine generally, in so far as it applies to executors, is supported by the authorities. Lee v. Simpson, 134 U. S. 572; Funk v. Eggleston, 92 Ill. 515; 34 Am. R. 136; Doe ex Dem. Gosson v. Ladd 77 Ala. 223. And there are cases holding that the same rule applies to testamentary guardians for the estates of minors. Terry v. Rodahan, 79 Ga. 278, 5 S. E. R. 38, 11 Am. St. R. 420; Thurmond v. Faith, 69 Ga. 832; Campbell v. Mansfield, 104 Miss. 533, 61 So. R. 593.''

In Wilkins et al, v. Deen Turpentine Co., 84 Fla. 457, 94 So. R. 508, this court in construing Secs. 1924 and 1925 of the Rev. Gen. Stats. of 1892, which became Secs. 2421 and 2422 General Statutes of 1906, say:

''1924. Sale of Real Estate of Infants. When any executor or administrator shall have the control or management of any real estate the property of an infant and shall think it necessary or expedient to sell the same, it shall and may be lawful for the said executor or administrator to apply either in term time or in vacation, by petition to the county judge or judge of the circuit court for the county in which said real estate may be situated, for authority to sell the same, and if the prayer of said petition shall appear to the said judge reasonable and just, he may authorize said executor or administrator to sell said estate under such conditions as the interests of said infant may, in the opinion of the said judge, seem to require.''

''Defendant in error, defendant below, contends, and the trial court seems to have held, that inasmuch as Sec. 2100 refers to Sec. 1924 only, which section con-

tains no provision making the giving of an additional bond a prerequisite or condition to the right of an executor or administrator having the control and management of real estate belonging to an infant to make sale of such property, the procedure being regulated by succeeding sections, that guardians of the estate of minors may be authorized to make sales of lands belonging to them without being required to give additional bond. Sec. 1925, Rev. Gen. Stats. of 1892, contains the following provision:

" 'Requiring Additional Bond.—The judge shall, in every order or decree authorizing such sale, require that the executor or administrator shall execute and file in the court a bond with surety or sureties, to be approved by the court or judge, in such penalty as the court or judge shall fix, conditioned to duly account for the same according to law.' "

"So that not only was such additional bond so conditioned required to be given by an executor or administrator as a condition to his authority to sell land, the property of a minor, in his control or management, but it was expressly made the duty of the judge in authorizing such sale to require 'in every order or decree authorizing' the sale to be made the execution and filing of such bond with surety or sureties to be approved by the court or judge. We think, therefore, that when the revisors of Sec. 2100 made provision for the sale of real estate of infants by guardians 'in the manner provided for sale of lands by executors and administrators in Sec. 1924,' it was their intention, and the intention of the legislature in adopting and enacting the Revised Statutes, that the proceedings in the two cases should be the same, and that the procedure in the one naturally and necessarily follows in

the other as incidental thereto. Sec. 1924 authorized something to be done. The following section (Sec. 1925) prescribes how it should be done."

But, aside from those infirmities in the procedure which have been dealt with by this Court in the cases above quoted from, there is the more flagrant disregard of the statute disclosed in the fact that the provisions of Sec. 2425, *supra*, were in nowise complied with. We are not here dealing with the sale which was attempted to be made under the notice published. We are not dealing with the sale made in pursuance to the citation served, nor are we dealing with any adjournment of that sale. We are dealing here with a private sale that was made pursuant to an order attempting to authorize the same made by the county judge instanter upon a petition being filed by the executor praying that the public sale should be not confirmed and that petitioner be ordered and authorized to make a sale of the property at private sale. The record shows that petition was filed on the 9th day of May, 1919, and that the order refusing to confirm the public sale and authorizing and directing the executor to make a private sale, or sales, of the property involved was also made on the 9th day of May, 1919.

It appears from the record that this order of sale was made without any citation having been issued to the infants in regard thereto and was made without the publication of the notice required by Sec. 2421, *supra*, and without the appointment of a guardian *ad litem* having been made after the petition was filed, and that, therefore, the county judge was at the time without jurisdiction to make such order in the premises. A deed attempting to convey the property of infants made in pursuance to an order made by a county judge authorizing and directing a private sale without the executor having given previous notice published once a

week for four consecutive weeks in a newspaper published in the county where the application is made of his intention to make application to said judge for authority to sell the same, setting forth in the notice the time and place and to what judge said application will be made, and without having appointed a guardian *ad litem* for infants after the petition was filed and without the infant owners having been given an opportunity for a hearing on such petition, is void.

The order appealed from should be affirmed and it is so ordered.

Affirmed.

ELLIS, C. J., AND WHITFIELD AND BROWN, J., concur.

TERRELL AND STRUM, J. J., dissent.