ALSPAUGH *et al. vs.* ADAMS *et al.*[*]

1. A bill for injunction is sufficiently sanctioned under sections 4184 and 4186 of the code, when any order thereon is granted by the chancellor which implies his sanction, and an order for the defendants to show cause, etc., has that import.
2. A suit by infants is not void. Code, §3263.
3. The same court which holds by a receiver has power to restrain him from paying out the fund (*Field vs. Jones*, 11 *Ga.* 418,) and an order of restraint granted on a bill in which he is defendant, implies that leave is granted to bring suit against him for the purpose of procuring such order and rendering it effective.
4. Equity can enjoin suitors in another case pending or determined in the same court. *Holt vs. Bank of Augusta*, 9 *Ga.* 552.
5. Though the verification of the bill by the affidavit of counsel, they not swearing positively, was not sufficient to warrant the grant of an injunction, the affidavits of others produced at the hearing supplied this lack of requisite certainty.
6. That a person has a pending petition to be made a party to a prior cause in equity, and another pending petition to set aside the decree rendered in said cause, will not hinder such person from filing his own bill to recover proceeds of the decree from one of the

---

[*]In this and the remaining cases of this term, no further opinion besides the head-notes was filed.

prevailing parties, and in the meantime to enjoin the execution of the decree, so as to hold up such proceeds to abide the result of the latter bill.

7. Want of equity in the bill as to co-defendants against whom injunction is denied is no insuperable obstacle to granting an injunction against a defendant as to whom there is ground for separate and independent relief.

8. In so far as the injunction was granted in the present case, it merely controls temporarily some of the fruits of the decree in the prior case, leaving that decree to stand.

9. Where a guardian has loaned her ward's funds with her own, taking a mortgage security for the whole as one sum, in her name individually, the ward, after the guardian has been dismissed for default or mismanagement, may reclaim his due share of the common fund in the hands of an agent or attorney of the guardian, or even of a creditor of the guardian who has acquired the same with notice of the ward's title.

10. The chancellor did not, by granting the injunction, transcend his power or abuse his discretion.

Judgment affirmed.

February 24, 1888.

BLECKLEY, Chief Justice.

[Reuben C. Oliver and others, minor children of R. M. Oliver, deceased, and Spencer B. Adams, as receiver for said minor children, filed their bill in the superior court of Bibb county against H. R. Brown, receiver, Mrs. Margaret A. Oliver, Charles J. Allen, J. W. Alspaugh, Victor & Co. and others. The allegations of the bill were substantially as follows:

The father of the minor complainants, R. M. Oliver, died in North Carolina in March, 1882, leaving a considerable estate, and leaving as his heirs Mrs. Margaret A. Oliver, his wife, said minor complainants, and a son, R. J. Oliver. Said R. M. Oliver had insurance policies on his life amounting to $3,247, and payable to his wife and children. His widow was appointed guardian for the minor children, and gave a guardian's bond for $6,000, with John M. Oliver and Charles J. Allen as securities. She took charge of the estate of her wards, reduced it to cash, collected the insurance money, and thus had on hand some $4.000 of her

wards' money.   After the death of R. M. Oliver, his son,
R. J., and John M. Oliver, formed a partnership and con-
tinued business in North Carolina under the firm name of
R. M. Oliver & Co.   The factory of said firm was burned,
and about March, 1884, the firm moved to Macon, Georgia,
and commenced to do business there under the style of R.
M. Oliver & Co., or perhaps Peterson, Oliver & Co., but
Peterson was never really a partner.   From March, 1883,
up to July, 1884, said firm had borrowed from Mrs. Oliver
some $10,000 or more, and about August 19th, 1884, gave
her a mortgage on their stock of goods to secure the sum
borrowed, which mortgage was duly recorded in Bibb
county; and on September 10th, 1884, gave her a renewal
note for $9,287 and a mortgage to secure the same, which
mortgage was also duly recorded.   Embraced in the loans
which Mrs. Oliver had made to the firm, was the money of
said minors; the firm knew this, knew they were borrow-
ing trust money, and Mrs. Oliver knew she was lending
trust money, the amount of their money so loaned the firm
being about $4,000, which was invested in the purchase of
the stock on which the mortgages were given, and no part
of which has ever been paid.   Mrs. Oliver has been re-
moved as guardian, and in August, 1887, her bond was for-
feited and judgment for the amount named therein ren-
dered against her and her securities, the judgment provid-
ing that it may be discharged on payment of $4,136.94,
with interest as specified in the judgment.   Spencer B.
Adams was appointed receiver to take charge of and col-
lect the estate of said minor wards.   R. M. Oliver & Co.
failed in October, 1884, and made an assignment to H. R.
Brown, in which they preferred Mrs. Oliver, among others,
for $9,287, and C. J. Allen for $4,000 besides interest, the
latter being secured by a second mortgage on their stock.
On October 22d, 1884, Victor & Co. and other creditors of
Oliver & Co. filed their bill in Bibb superior court against
J. M. and R. J. Oliver, H. R. Brown and Mrs. Margaret
Oliver, making various allegations of fraud on the part of

Oliver & Co., charging that Mrs. Oliver's mortgage was fraudulent, etc., praying that it be set aside, that the assignee be enjoined from selling the stock, etc., and that the defendants show cause why a receiver should not be appointed and the assets of the firm be distributed according to equity. The chancellor heard the case on December 22d, 1884, granted the injunction, and appointed Brown permanent receiver to take charge of and keep the assets until further order of the court. Various other creditors were from time to time made parties. The defendants all filed answers to the creditors' bill, denying fraud and setting up that the indebtedness to Mrs. Oliver was *bona fide*. Said creditors' bill was amended, and various orders passed, not necessary to be specified. The bill was finally set for trial for the 2d day of December, 1887. Before the time of the hearing, through the diligence of said Spencer B. Adams, complainants in the present bill had learned of the pendency of that bill, and had prepared their petition to be allowed to intervene or to be made parties thereto, and in such petition set out fully their rights. They presented this petition to the judge presiding on December 1st, 1887, and said judge passed an order directing that all parties be served with notice of the application, and show cause before him the next day why it should not be granted. Due and legal service of this order was made. When the time for the hearing arrived, and the case on the creditors' bill was called for trial the next day, petitioners' attorneys were absent, one of them being sick, and the other out of the county. The attorneys representing a portion of the parties to said creditors' bill agreed to and had signed a pretended consent verdict, by which, after paying out of the fund in the hands of the receiver, Brown, certain expenses, costs and attorneys' fees, the remainder, $5,217.35, was divided into two equal parts; $2,018.67 to be paid on the mortgage of Mrs. Oliver, but to be paid by the receiver to one Kerr, attorney for J. W. Alspaugh, who, the pretended verdict recited, held an order of Mrs.

Oliver on the receiver for an amount exceeding said sum, which order it was stated the receiver had accepted, payable out of said fund; the balance of this part, to-wit, $590, to be paid to C. J. Allen on his mortgage; the other moiety of $2,608.67 to be paid to certain attorneys' fees, etc., and *pro rata* to creditors named on a list in said verdict, etc. As soon as the attorneys for the present complainants learned of this verdict, and on the same day it was rendered, they presented to the presiding judge a petition, setting forth the facts surrounding the taking of said verdict, and of the reason for their absence, and asked that the verdict be set aside and a new trial granted. Said judge passed an order on said second of December, 1887, that the parties to said cause should show cause why this motion should not be granted. Due service of the motion and order were made, and the matter set down for hearing for the next morning.

Complainants in the present bill charge that, at the time of the entry of said pretented consent verdict, none of the defendants to said creditors' bill were represented or present or consented, unless it was the receiver, Brown, and Charles J. Allen, and the creditors were allowed to participate in the scheme of division, and the amount of claims set forth in the verdict were fixed without any proof having been made, and judgment given against said Oliver & Co. for various amounts in favor of their creditors. The pretended order of Mrs. Oliver to Alspaugh is a sham, without consideration, made to defeat complainants in recovering from Mrs. Oliver such trust funds, and Alspaugh took said order with full knowledge of the fact that a large portion of the money secured by the mortgage of Mrs. Oliver, was the money of complainants for which Mrs. Oliver had never accounted to them. Said Alspaugh was no party to the creditors' bill mentioned. Charles J Allen being a security on the guardian's bond of Mrs. Oliver, and a defendant in the judgment held by these present complainants against Mrs. Oliver, J. M. Oliver and

Charles J. Allen, and all of these three last named parties being insolvent, these complainants should be allowed to recover the interest of said Allen, as well as that of Mrs. Oliver, in the funds in the hands of receiver Brown, and the claim of complainants as to all the funds in said receiver's hands is superior to the claim of the creditors of Oliver & Co., and entitled to priority of payment.

Complainants pray, among other things, that the verdict and decree mentioned be set aside; that they may have a decree in their favor for the amount due them, to be paid by receiver Brown out of the funds in his hands and to be a first lien on said sum; that if this cannot be done, they may have a decree for whatever amount may be found to be due Mrs. Oliver and Charles J. Allen on their mortgages, to be paid complainants until complainants shall receive the sum due them; that a decree may be rendered setting up the mortgage of Mrs. Oliver as a first mortgage and of Allen as a second mortgage on the property of Oliver & Co., and on the funds in the hands of receiver Brown, in preference to the claims of other creditors mentioned; and that complainants be decreed to have applied to their claim so much of the sum so due Mrs. Oliver and Adams as will pay their claim. The bill further prays for general relief, injunction and *subpœna*. Among others, *subpœna* is prayed against Mrs. Oliver, Allen, and Alspaugh.

The bill was verified as stated in the head-notes. The chancellor passed an order requiring respondents to show cause, on December 12th, 1887, why injunction should not be granted as prayed for; that respondents be restrained from distributing the proceeds under the decree, except as to counsel fees and expenses, until further notice of the court, etc. Attached to the bill as exhibits were the mortgage of Oliver & Co. to Mrs. Oliver, dated September, 1884; the petition of Adams as receiver to be made a party to the creditors' bill, to which latter were attached the application of Mrs. Oliver, her letters of guardianship, and the proceedings removing her as guardian,

giving judgment on the guardian's bond and appointing Adams receiver, as stated in the bill. Accompanying the petition of Adams to be made a party was the order of the chancellor directing its service, and calling on defendants to show why the prayer of the petition should not be granted, together with acknowledgement of service by the attorneys for the various parties to the creditors' bill. There were also attached as exhibits to the bill the petition of Adams, receiver, praying that the verdict mentioned be set aside, accompanying which was a copy of said verdict and the decree of the court thereupon, and copy of the mortgage made by Peterson, Oliver & Co. to Mrs. Oliver on August 19th, 1884.

To this bill the defendants demurred on the grounds, among others, that the bill has been filed and is proceeding against Brown, who is a receiver appointed by the superior court of Bibb county, and yet it does not appear that any authority or permission has ever been obtained from the chancellor of said court allowing it to be filed against said receiver; and that the bill is not verified as required by law.

The defendants, except Allen and Mrs. Oliver, answered the bill, averring, among other things, that the verdict and decree were regularly obtained, etc.; that they were ready for a hearing, at the time appointed, of the application of Adams, receiver, to be made a party to the creditor's bill, but such application was not represented and not pressed; parties announced ready for trial on the main case, and a decree was obtained; that the attorneys for Adams, receiver, did file a motion to set the decree aside, to which respondents prepared an answer, but at the time appointed for hearing said motion, said attorneys had previously prepared the present bill and declined to proceed with the said motion, preferring, as they stated, to embody their defences and claims in this bill. Respondents deny that the insurance on R. M. Oliver's life was payable to his wife and children. They say it was payable to Mrs.

Oliver alone; that the insurance money was collected by Alspaugh and paid over to her, and belonged to her absolutely; that at the time of the taking of the verdict and decree, Mrs. Oliver had transferred her rights in the case to Alspaugh, for collection, and had executed two orders, one on her attorney and the other on Brown, receiver, the latter being for $2,350, which was accepted by Brown to be paid from the funds of Oliver & Co. when recovered. Various other allegations are made in the answer, setting up the superiority of the claims of respondents to those of the present complainants; claiming that all interested in the creditors' bill were given full notice; denying that respondents had any notice of any trust or claim of complainants in this present bill to the funds, etc.

On the hearing before the chancellor, the complainants introduced evidence tending to show that Mrs. Oliver had loaned large sums to Oliver & Co., which she had taken the mortgages to secure, and included in these sums was the money of the said minor complainants; that Oliver & Co. knew that they were borrowing these trust funds; and that Alspaugh knew that part of the money secured by the mortgages consisted of trust funds, and had obtained the order heretofore mentioned, given him by Mrs. Oliver on Brown, receiver, by false promises, and had attempted to use it in direct opposition to her wishes. Evidence was introduced by respondents directly contradictory to that introduced by complainants, and also tending to show that Allen was entirely solvent.

The chancellor passed an order that injunction be granted as to the claim of Alspaugh only, and be refused as to all other defendants to the bill; that the motion to set aside the decree be overruled and refused, except that the receiver, Brown, should retain, till the further order of court, the money awarded by the decree to the order of Mrs. Oliver and directed therein to be paid to Kerr, as attorney for Alspaugh. To this order exception was taken.]