GRIMSLEY *et al. vs.* GRIMSLEY *et al.*

1. An executor made to J. J. G., as testamentary guardian of his children, a deed to an undivided half interest in lots of land 360 and 354, in Early county. He also made to himself as testamentary guardian of H. H. G., a similar deed to an undivided half-interest in these lots. H. H. G. conveyed an undivided half interest in lot 359 to J. J. G., as testamentary guardian, and received from the latter an undivided half interest in lot 360. H. H. G. afterwards mortgaged lot 360, and under the mortgage *fi. fa.* the defendant purchased it at sheriff's sale. He also claimed lot 359 under other conveyances:

*Held,* that on a suit in ejectment, the children of J. J. G. could not recover the whole of lot 359, and also an undivided half-interest in lot 360, and a verdict therefor was not sustainable.

2. A father may appoint a testamentary guardian for his own children, but not for the children of anybody else. Under the appointment of one as testamentary guardian of children of a person other than the testator in this case, the appointee became a trustee for such children and held the property devised as such, and not as guardian.

3. Where a guardian sold land and received and misapplied the purchase money thereof, and the purchasers knew of his misapplication of the fund, and assisted in it by paying it to his individual creditors, they obtained no title to the land, and the statute of limitations could not avail them.

4. The judgment of the court below refusing a new trial is reversed, with directions that the plaintiffs be required to write off from the judgment the undivided half-interest in lot 360 and the mesne profits recovered.

February 24, 1888.

Ejectment. Verdict. Title. Guardian and Ward. Trusts and Trustees. Parent and Child. Fraud. Statute of Limitations. Practice in Supreme Court. Before Judge JOHN T. CLARKE. Early Superior Court. April Term, 1887.

The record in this case includes many Grimsleys and much confusion. Owing to the mixed state of the transcript, the omission of some words in copying, and the erroneous copying of others, some of it is scarcely intelligible. The following is as clear a statement as the reporter can gather from it:

On October 4, 1883, Alexander S., John S., Dixie, Henry H., and Elizabeth Grimsley filed a suit in ejectment against T. R. Grimsley, tenant, and Anthony Hutchins, landlord, to recover lots of land numbers 359 and 360 in the 28+.ι district of Early county, containing 500 acres, more or less. On April 7, 1887, they amended their declaration by alleging that John S. Grimsley was an erroneous name and should be John J.; also that Dixie Grimsley had, by intermarriage, become Dixie White. On the next day, an order was taken allowing this amendment, and reciting that Henry H. and Elizabeth were minors and

Alexander S. was a lunatic, and appointing John J. as their guardian *ad litem*.

The defendant filed pleas and amendments which set up substantially the following defences:

(1) The general issue.

(2) Prescription by seven years possession under color of title.

(3) That on January 7, 1876, John J., [apparently John J., Sr.] as testamentary guardian of the plaintiffs, was in possession of the land sued for, and he and Hamilton H. were the joint owners of it, he holding as guardian and Hamilton H. in his own right; that, wishing to divide the lands, they did so on that day, and Hamilton H. made John J., as guardian, a deed to his interest in lot number 359, and received from the guardian a paper purporting to be a deed to the interest of the latter, as guardian, in lot number 360; that that was a fair and equitable division, and after it they each took possession of the lots falling to them respectively thereunder; that, in January, 1878, John J., as guardian, procured from the ordinary an order to sell lot number 359, and after complying with all the requirements of law, sold it in front of the court-house door on the first Tuesday in August, 1878, for $800.00, and defendant, Hutchins, and John M. Wade, R. W. Wade and G. W. Holmes became the purchasers, and paid the amount stated to the guardian, which was the fair market value of the land, and defendant, Hutchins, holds " said titles and said deeds"; that on January 7th, 1876, Hamilton H. sold lot number 360 to Joseph Grimsley, and afterwards it was sold under a *fi. fa.* in favor of Jernigan against Joseph F. Grimsley, and Hutchins became the purchaser for $695, which was its full value; that, before the plaintiffs should be allowed to recover of him the lands or any part thereof, they should pay back to him and his co-tenant the amount of money paid to their guardian for lot number 359, with interest thereon; and he prayed that this

be required, and that such other relief as usual be granted to him.

By amendment, it was alleged that Hamilton H. is totally insolvent; that Joseph F. is insolvent and a non-resident; that John J. [Sr]., the former guardian of the plaintiffs, is dead, and was insolvent at his death; that all of the plaintiffs are insolvent; that Hutchins claims to be the owner of lot number 360, and is the real defendant as to it, and also as to two-thirds interest in lot number 359; and that G. W. Holmes is the owner of the other one-third interest in the last named lot.

On demurrer, all of the pleas, except those of the general issue and prescription, were stricken.

The evidence was, in brief, as follows: The will of J. W. Grimsley, recorded October 10, 1871, after providing for the payment of the testator's debts and leaving certain property to his wife, contained the following items:

" I will and direct that my executor, hereinafter named, shall have full discretion to sell all my property, both real and personal, either at public or private sale, as he may deem most for the benefit of my heirs, and do hereby empower him to do so without any order of court, and to make titles to the same, as fully and freely as I could were I living and acting in person.

" I will and direct that all of my property of every description be equally divided between my children, and the children of my deceased son, W. J. Grimsley, to represent their deceased father in this division.

" I will and direct that the parents of my grandchildren who may take property under this, my will, may act as guardian for their respective children, without giving bond as such, and by this appointment alone, viz. Elizabeth Grimsley, for her three children

" I will and bequeath that portion of property which John J. Grimsley would receive under the fourth item in my will, vest in and belong to said John J. Grimsley's five children, viz: Alexander S. Grimsley, John J. Grimsley, Jr., Dixie Grimsley, Henry W. Grimsley and Elizabeth J. Grimsley; and that John J. Grimsley, the father of the five aforesaid children, be their guardian, authorized to receive their portion without other appointment than this, and without being required to give bond as such guardian.

" I nominate my beloved brother, Richard B. Grimsley, of Clay

county, Ga., my executor to this, my last will and testament, and also appoint him testamentary guardian of my minor children, viz: Thos. R. Grimsley, Hamilton H. Grimsley, Elizabeth A. Grimsley."

On December 5, 1871, Richard B. Grimsley, executor of the testator, made a deed to John J. Grimsley, " testamentary guardian of his minor children, viz : Alexander S. Grimsley, Dixie W. and Elizabeth J. Grimsley," conveying to him an undivided half interest in lots 359 and 360. The deed recited that it was made by virtue of the provisions contained in the will; that after advertising the land according to law, it was exposed for sale at the courthouse door ; and that " John J. Grimsley, guardian," was the highest and best bidder, and the property was sold to him for $1,250, " unto him, the said John J. Grimsley, guardian, his heirs or wards, or their assigns, forever in fee simple."

On the same day, Richard B., as executor, made to himself, as guardian of Hamilton H., the other half-interest in the lots in controversy for the expressed consideration of $1,250.

On January 7, 1876, Hamilton H. conveyed to John J., as testamentary guardian of his minor children (naming them), one-half undivided interest in lot 359 for the expressed consideration of $600.

On the same day, John J., as testamentary guardian of his minor children, conveyed to Hamilton H. an undivided half interest in lot 360 for the expressed consideration of $600.

On the same day, Hamilton H. conveyed to Jos. F. Grimsley lot 360, and on March 10, Jos. F. mortgaged the land to Hamilton H. to secure a note due to him or bearer. On August 2, 1877, Joseph F. conveyed to Mrs. Gautimalla Grimsley. One Jernigan, as bearer of the note, foreclosed the mortgage referred to, and on December 6, 1881, the sheriff made a deed to the defendant, Hutchins. Thus lot 360 came to him.

John J. Grimsley filed a petition with the ordinary, alleging himself to be the testamentary guardian of his

minor children, and praying leave to sell lot 359; also alleging that there were certain judgments for costs amounting to about $50.00, and a mortgage on the land to Mrs. Elizabeth Grimsley, guardian, for $182.62. The leave was granted, and on August 6, 1878, he made a deed to Holmes, Hutchins and two Wades, as partners, for the expressed consideration of $800.00, reciting the order, advertisement, etc. The two Wades conveyed to Hutchins their interest in the firm and its property, including a one-third interest in lot 359.

One of the plaintiffs was introduced as a witness, and testified as to the amount of cleared land in each lot, and their value for rent; that Hutchins had been in possession of lot 360 about four or five years and of lot 359 longer; and that plaintiffs were all the children of John J. Grimsley and grandchildren of J. W. Grimsley.

Hutchins, the defendant, testified, in brief, as follows: Was present at guardian's sale of lot 359; it was bid off at $1,000.00; he has been in possession since the sale, first with his co-purchasers and afterwards by himself, since his purchase from the Wades; he understood from them it was arranged beforehand that the guardian's sale should be made to perfect titles; lot 359 has not been cultivated since he owned it; it is worth nothing for rent; he has tried to rent it and failed; he purchased lot 360 at sheriff's sale, and has rented it each year (stating the amounts received from it); there was some fence on one side of lot 359, but it was very poor and some of it has been burned; the mother of the plaintiffs lived on lot 360 one year after he purchased it; John J. and Alex. were young men and worked on the lot; their mother had rented it from witness; Alex. did not work the whole year, but lived with witness on his place a part of the time.

Hamilton H. testified, in brief, as follows: When he made the deed in 1876 to John J., his testamentary guardian, he was a minor; after he became of age, he made another deed; he signed any kind of deed John J. wrote;

did not read them; he received in exchange for this another lot owned by John J., not involved in this litigation; John J. got that land back from witness, and he received a horse and an old buggy for his part; in fact, he has received nothing for his interest; Alexander is twenty-five or twenty-six years of age, John J., Jr., twenty-two or twenty-three, Dixie twenty-one or twenty-two, and the others are minors.

R. H. Powell, Esq., testified, in brief, as follows: Was present at guardian's sale and saw money paid for lot 359 to John J.; thinks R. Wade paid for it; R. E. Kennon was present; Mrs. Elizabeth Grimsley was either present or represented, and probably another person was present; does not know about the distribution of the money; is of opinion that some of it was paid out to some parties present; John J. and Kennon took the balance of the money and went off with it; does not know whether or not the plaintiffs received any of it; their father, John J., used (?) the money and went away with it.

J. M. Wade testified, in brief, as follows: Cannot remember details from lapse of time, and could tell only by his books that he paid out $1,000 for the land bought for the firm of which he was a member; the money was paid by witness to John J. Grimsley, Kennon, Powell, Mrs. Elizabeth Grimsley, and some one else, representing a creditor of John J. There were creditors of John J. present taking the money, and witness was of opinion that John J. did not go away with more than $50. Kennon was attorney for John J., guardian. It was arranged beforehand; the firm had a trade with John J. that if he could make them a good title, they would pay him $1,000 for lot 359, and petitions and orders were had, and the property sold at guardian's sale under their agreement; witness thought they were getting a good title. In paying out money, John J. directed to whom each part was to be paid, and the firm paid it over to the respective parties for him.

The jury found for the plaintiffs lot 359, the undivided half of lot 360 and $300 for mesne profits. The defendants moved for a new trial on the following grounds:

(1)–(3) Because the verdict was contrary to law, evidence, the weight of evidence and the principles of equity and justice.

(4) Because the court erred in charging the jury that, if they " believed from the evidence that Anthony Hutchins, G. W. Holmes, J. M. Wade and R. W. Wade agreed with John J. Grimsley, as guardian of the plaintiffs, that if he would make them good titles to lot of land number 359, they would pay him the sum of one hundred dollars therefor, and that, pursuant to said agreement, the said Grimsley did procure the order from the ordinary to allow him to make such sale, and after getting the order did sell said land, and said Hutchins, Holmes and the Wades became the purchasers at said sale, and paid the money to said Grimsley, and that said sale was merely to carry into effect the private contract, and he appropriated the money to paying his individual debts with their knowlege, they being present and counting out and delivering the money to the several creditors of Grimsley as he directed, such transactions would be a fraud upon the plaintiffs, and the defendants would get no title under said deed, and you should find for the plaintiffs."

(5) Because the court erred in striking the equitable plea of defendant.

(6) Because the court erred in not charging the jury that, if any of these complainants lived on said lot of land number 360 after they became of age, and after defendant, Anthony Hutchins, had purchased the same at sheriff's sale (if such fact did appear), and while they were living thereon, and did recognize Hutchins as the owner of said land, they could not recover their interest in said lot;— said question having been raised by the argument of counsel for defendant before the court and jury.

(8) Because the court erred in ruling out the deed from

John J. Grimsley, as testamentary guardian of plaintiffs, to Hamilton H. Grimsley, dated January 7, 1876, except for the purpose of showing prescription under it, under the circumstances under which it was made and under the evidence.

(9) Because the court erred in charging the jury that the statute of limitations did not run against the plaintiffs until after they became of age.

The motion was overruled, and the defendants excepted.

(It will be noted that there were two persons of the name of John J. Grimsley,—the one referred to generally as John J. being the senior, who was the testamentary guardian, and the other John J., Jr., one of the plaintiffs.)

R. H. POWELL, for plaintiffs in error

W. D. KIDDOO, for defendants.

BLANDFORD, Justice.

It is manifest, from the facts in the record, that the plaintiffs, the children of John J. Grimsley, could not recover more than an undivided half-interest in lots 360 and 359. But they did recover the whole of lot 359 and an undivided half-interest in 360. The executor made to John J. Grimsley, as testamentary guardian, a deed to an undivided half interest in 360 and 359. He made also to himself, as testamentary guardian of Hamilton H. Grimsley, a similar deed to an undivided half-interest in both these lots; and Hamilton H. conveyed an undivided half-interest in lot 359 to John J. Grimsley, as testamentary guardian, for these children. Thus the plaintiffs became entitled, apparently, to the whole of lot 359, by virtue of the executor's deed to an undivided half interest therein, and by virtue of the deed of Hamilton H., who had become of age, to the other undivided half-interest. John J., as testamentary guardian of these children, conveyed to Hamilton H. an undivided half-interest in 360; and Hamilton H.

thus became the owner of 360, which was afterwards mortgaged, and, under a mortgage execution, sold by the sheriff to Hutchins. Under the facts of this case, we cannot see how it is possible that these plaintiffs could recover the whole of lot 359, and an undivided half-interest in 360. That was clearly too much.

In the will of J. W. Grimsley, he appointed his son, John J., testamentary guardian for the latter's children. We do not think he could do that. A father may appoint a testamentary guardian for his own children, but cannot appoint one for the children of anybody else. We will give effect to that part of the will, however, to this extent: We hold that, by this appointment as testamentary guardian, John J. Grimsley became trustee for these children, and held the property, not as guardian, but as trustee.

We do not think that the statute of limitations could avail the plaintiffs in error as to lot 359; for the reason that when John J. sold this land, he took the money and misapplied it; and those parties who purchased it knew of his misapplication of this fund, and assisted in it, because they paid it to his individual creditors, and they cannot take anything by their own wrong. They got no title to this land.

The judgment of the court below in refusing a new trial is reversed, with directions that the plaintiffs be required to write off from the judgment the undivided half-interest in lot 360, and the mesne profits recovered in this case.

Judgment reversed, with directions.