GEORGIA RAILROAD BANK & TRUST CO. *v.* LIBERTY
NATIONAL BANK & TRUST CO., guardian, *et al.*

6

*Cumming & Harper* and *Hitch, Denmark & Lovell,* for plaintiff in error.

*Hull, Barrett & Willingham, Edward C. Brennan,* and *Conneral & Hunter,* contra.

BELL, Justice.   The Liberty National Bank and Trust Company, of Savannah, Georgia, "as guardian of the person and property of George H. Haslam, a person non compos mentis, and as next friend of said George H. Haslam," brought suit against the Georgia Railroad Bank and Trust Company, of Richmond County, and J. Harold Mulherin, of Chatham County, to recover the sum of $21,000, and for such other relief as the plaintiff might be entitled to in equity.   The company first named will be designated herein as the plaintiff bank or as the trust company, and the other company will be referred to as the defendant bank or the defendant banking company.   The petition was based upon an alleged misapplication of funds by Mulherin while acting as guardian for Haslam during his minority, it being averred that the defendant banking company participated in such misapplication.   The petition was in two counts.   The first count proceeded upon the theory that Mulherin, as guardian, used the funds of his ward in making an unauthorized investment by purchasing from the defendant banking company certain bonds of a private corporation, while the second count alleged the use of such funds to pay in part a debt owed to the defendant banking company by the same private corporation, in which Mulherin was interested.   The allegations of fact were the same in each count, with the exception of some variation to meet the possible proof as to the intent of the parties at the time of the transactions in question.   The defendant banking company demurred to each count both generally and specially.   The plaintiff offered an amendment covering several matters, which amendment the court allowed subject to demurrer.   The defendant renewed all grounds of its original demurrer, and advanced additional grounds.   The court overruled the demurrers as to all grounds, and the banking company excepted.

■ The petition alleged that Mulherin was appointed as guardian of the person and property of George H. Haslam, a minor, in the year 1926; that Haslam attained his majority in January, 1933, but that he was at that time an insane person and that during March, 1933, he was adjudicated insane, and the plaintiff trust company was appointed as guardian of his person and property upon such adjudication. The authority of the plaintiff to sue as guardian was challenged in certain grounds of the defendant's demurrer, by an attack upon the constitutionality of the statutes relating to the appointment of guardians for insane persons, which statutes were quoted in the demurrer from Michie's Code as follows: Section 3089: "The ordinaries of the several counties of this State may appoint guardians for the following persons, viz.: idiots, lunatics, and insane persons, and deaf and dumb persons when incapable of managing their estates, habitual drunkards, and persons imbecile from old age or other cause, and incapable of managing their estates." Section 3092: "Upon the petition of any person, on oath, setting forth that another is liable to have a guardian appointed (or is subject to be committed to the Georgia State Sanitarium), the ordinary, upon proof that ten days notice of such application has been given to the three nearest adult relatives of such person, or that there is no such relative within the State, or where such notice is waived in writing by such relative, and affidavit is made by any one of such relatives, or other person, that such person is violently insane and is likely to do himself bodily injury, and where the truth of such affidavit has been verified in writing by a practicing physician appointed by the ordinary to examine such person, shall issue a commission directed to three reputable persons, two of whom shall be practicing medical physicians in good standing, said physicians to be residents of the county, if that number reside therein, and the county attorney or solicitor of any city court located in said county, and if no county attorney or solicitor of said city court, the solicitor-general of the circuit or some attorney of the county appointed by him, requiring them to examine by inspecting the person for whom guardianship or commitment to the sanitarium is sought, and to hear and examine witnesses on oath, if necessary, as to his condition and capacity to manage his estate, and to make return of such examination and inquiry to the said ordinary, specifying in such return under which

such classes they find said person to come. Such commission shall be sworn by any officer of this State authorized by the laws of this State to administer an oath, well and truly to execute such commission to the best of their skill and ability, which oath shall be returned with their verdict. No guardian shall be appointed for the estate of such person, nor shall such persons be committed to the sanitarium without the unanimous verdict of such commission." It is contended that neither of these sections provides for any notice to the person alleged to be insane, and that because of this omission both sections violate the due-process clauses of the State and Federal constitutions respectively.

The petition alleged facts to show that in the particular case the person claimed to be insane was actually served with notice of the lunacy proceeding, and the demurrer does not go to the sufficiency of the notice, but, as to this matter, is confined to an attack upon the validity of the statute. We can not agree that this statute is unconstitutional for the reason that it fails to provide for any notice to the person alleged to be insane. This statute was construed in *Morton* v. *Sims,* 64 *Ga.* 298. Certain amendments have been added since the date of that decision, but the amendments do not affect the question presented in the instant case. In that decision it was said, that, "to comply with the spirit of the statute, as well as the general law, it would be better for the ordinary to require the notice to be given to the alleged imbecile himself, or else designate by order a guardian ad litem to receive notice for him." In *Yeomans* v. *Williams,* 117 *Ga.* 800 (45 S. E. 73), it was said: "In this country, as a general rule, it has been held that the lunatic is entitled to reasonable notice of the time and place of the inquisition, and has a right to be present and contest the proceedings; and it has been said that even where the statute does not provide for notice to the lunatic, it will be presumed that reasonable notice was intended to be given." See also *Allen* v. *Barnwell,* 120 *Ga.* 537, 539 (48 S. E. 176). In *Coker* v. *Gay,* 154 *Ga.* 337, 343 (114 S. E. 217), it was said: "Under our law original, general, and exclusive jurisdiction is conferred upon the courts of ordinary over the appointment of guardians for lunatics, and these courts now have the power formerly exercised by the courts of chancery in this matter." Upon a comparison of this statement with the decision in re Blewitt, 131 N. Y. 541 (30 N. E. 587), it is ap-

parent that the jurisdiction of lunacy proceedings in this State is similar to that which obtains in New York under a statute of that State. In Chaloner *v.* Sherman, 242 U. S. 455 (37 Sup. Ct. 136, 61 L. ed. 427), it was held by the United States Supreme Court that "such notice and opportunity to be heard at the inquisition was required by the law of New York, though not expressly recited in the statute." The court further said: "As the plaintiff had notice and opportunity to be heard at each stage of these proceedings, the essential elements of due process of law were fully met, and the court had jurisdiction." But the sole attack upon the statute is that it does not provide for any notice to the person alleged to be insane, and we do not deem it here necessary to discuss the question of notice beyond the express provision as to examination by inspection. The statute declares, in terms, that the commission shall "examine by inspecting the person" for whom guardianship is sought, and in the present case it is sufficient to say that this requirement will save the statute from the contention that it does not provide for any notice to the alleged lunatic. In *Singer* v. *Middleton,* 135 *Ga.* 825 (2) (70 S. E. 662), it was held: "In a proceeding to appoint a guardian for a person alleged to be imbecile, the statute (Civil Code (1895), § 2573) [(1910), § 3092], is to be strictly construed, and the provision that the person for whom it is sought to have a guardian appointed shall be 'examined by inspection' by the commissioners is mandatory, and requires formal examination by the commissioners in a body." Counsel for the plaintiff in error rely mainly upon decisions which do not consider the matter of inspection, including such cases as In re Lambert, 134 Cal. 626 (66 Pac. 851, 55 L. R. A. 856, 86 Am. St. R. 296), and Citizens State Bank *v.* Shanklin, 174 Mo. App. 639 (161 S. W. 341). In Ex parte Scudamore, 55 Fla. 211 (46 So. 279), it was held that the sections of the statute of Florida requiring the personal presence of the alleged lunatic were sufficient to fulfill the requirements of due process. In the opinion it was said: "That a committee of three persons, possibly strangers to the subject of inquiry, could have a sane person brought in person before them, and make of him such thorough mental and physical examination as this statute requires, without his being aware of their purpose, is hardly conceivable. Such committee is a quasi-official body, and the presumptions are that they perform their duty prop-

erly, without any effort wrongfully to conceal their purpose from the subject of their inquiry." Cf. *Reagan* v. *Powell*, 125 *Ga.* 89 (53 S. E. 580). In Moats v. Moore, 199 Ill. App. 270, it was held that *no notice* to an alleged insane person is necessary in proceedings to determine insanity where the person is brought before the court. A similar conclusion was reached in State *v.* Brasher, 200 Mo. App. 117 (201 S. W. 1150), where the court explained and distinguished the earlier case of Citizens State Bank *v.* Shanklin, supra, of the same jurisdiction, as well as the California case of Lambert, supra. In Simon *v.* Craft, 182 U. S. 427 (21 Sup. Ct. 836, 45 L. ed. 1165), it was said that "the due-process clause of the 14th amendment does not necessitate that the proceedings in a State court should be by a particular mode, but only that there shall be a regular course of proceedings in which notice is given of the claim asserted, and an opportunity afforded to defend against it." In Shapley *v.* Cohoon, 258 Fed. 752, it was held that where pursuant to a State statute one alleged to be insane is personally examined by the committing magistrate and physicans, and is given an opportunity to be heard, there is no violation of the .Federal constitution as to due process. Under the Georgia statute the commission to examine is a branch of the court, and, as was held in *Singer* v. *Middleton*, supra, the examination by inspection is mandatory and must be a formal examination by the commissioners in a body. This requirement of the statute supplies to the alleged lunatic sufficient notice and opportunity to be heard.

The fatal defect in the proceeding considered in *Morton* v. *Sims*, supra, was the failure to give any notice to relatives within the purview of the statute. This omission was jurisdictional, and could not be waived by the alleged lunatic. The facts of the case did not require a decision as to the necessity of giving notice to the alleged imbecile *before* the appointment of a commission. Accordingly, the statement in that decision as to the necessity of such notice was a mere dictum, and does not control the case at bar. Our present opinion is that due process does not necessitate such notice, but is satisfied by a formal personal inspection by commissioners named. We conclude that the statute is not unconstitutional for the reason urged by the defendant banking company.

■ The demurrer of the defendant banking company made a further attack upon the appointment of the plaintiff bank as

guardian of the person and property of Haslam as a person adjudicated to be non compos mentis, upon the ground that Mulherin had not been discharged as guardian of Haslam as a minor. There is no merit in this contention. The office of guardian of a minor expires with the cause of it, and is thus terminated as a matter of law upon the ward's arrival at majority. *Formby* v. *Wood*, 19 *Ga.* 581; 28 C. J. 1096, § 110.

■ As stated above, the suit was originally brought by the trust company "as guardian of the person and property of George H. Haslam, a person non compos mentis, and as next friend of said George H. Haslam." By amendment the petition as to designation of parties was so changed as to make it a suit by the trust company as guardian of the person and property of Haslam, a person non compos mentis, and also by Haslam through the trust company "as his next friend." The defendant bank demurred to so much of the amendment as sought to add the insane person as a party suing by the trust company as next friend, one ground of the demurrer being that the guardian and ward both could not sue, and consequently there was a misjoinder of parties. Another ground of the demurrer was that the trust company has no authority, under the law of Georgia or of the United States, to act as next friend in a suit by a person non compos mentis. These grounds of demurrer were special in nature, and were appropriately taken. The plaintiff trust company as guardian and the ward by next friend could not both sue, over proper objection. *LaGrange Mills* v. *Kener*, 121 *Ga.* 429 (3) (49 S. E. 300); *Stanley* v. *Stanley*, 123 *Ga.* 122 (51 S. E. 287); Civil Code (1910), §§ 5416, 3047, 6307. Nor do the Federal laws relating to national banks or the State law defining the powers of banks and trust companies authorize any of such corporations to appear as next friend. U. S. C. A. title 12, §§ 24, 248 (k); Michie's Code, § 2817. The laws here cited may tend in that direction, but they do not quite confer such authority. The term prochein ami, or next friend, imports a natural person; and while the term "person" will ordinarily include a corporation (Civil Code (1910), § 5), the question of the authority of a bank or trust company to appear as next friend involves a consideration of charter power, as well as the general law. "A corporation is an artificial person created by law for specific purposes, the limit of whose existence, powers, and liabilities, is fixed

by the act of incorporation, usually called its charter." Civil Code (1910), § 2188. The trust company was organized for pecuniary gain, whereas the law of this State does not provide in terms for compensation to a next friend, although we do not say that such compensation might not be allowed in the discretion of the court in a proper case. A corporation is not impliedly within a statutory provision applicable to persons, if it is not within the purpose and intent of such provision, or if an attempt to exclude it otherwise appears. *Boykin* v. *Hopkins*, 174 *Ga.* 511 (162 S. E. 796); 14 C. J. 65, § 30. No decision has been cited and we have found none in which a corporation has been permitted to appear as next friend; and we think there is no law in this State to authorize such action. The court erred in not sustaining the grounds of special demurrer stated above in this division.

■ The authority of the plaintiff trust company to sue as guardian for the person non compos mentis has been questioned by the defendant bank only upon the grounds stated above; and since we are of the opinion that, as against these objections, the plaintiff could sue in such capacity, it becomes necessary to determine whether the petition was sufficient to show liability on the part of the defendant banking company. This question is, of course, raised by the general grounds of demurrer, and after passing upon these grounds we will consider certain additional grounds of special demurrer. The petition alleged the following: For many years prior to 1927, the Perkins Manufacturing Company, a private corporation, had had business dealings with the defendant bank and had borrowed large sums of money from it. To secure the loans, the manufacturing company had pledged to the bank certain bonds issued by it on deeds of trust. In January, 1927, and May, 1928, the defendant Mulherin delivered to the defendant banking company checks aggregating the sum of $21,000, drawn upon Realty Savings & Trust Company, Augusta, Georgia, and payable to the order of the defendant bank. These checks were signed "George Harold Haslam, by J. Harold Mulherin, Gdn.," and were drawn upon funds belonging to Haslam, the minor. The defendant bank cashed the checks and applied the proceeds to the reduction of the indebtedness owing to it by the Perkins Manufacturing Company, and delivered to Mulherin bonds of that company in the amount of $21,000, which had been theretofore pledged as collateral security

for such debt. "Such bonds at no time had any market value, general or limited, at any figure even remotely approaching their face value. These facts were known either in detail or by way of general knowledge and belief to the Georgia Railroad Bank during the years 1927 and 1928. . . Defendant bank had full knowledge that on each of the dates defendant Mulherin was the then guardian of George H. Haslam, and was likewise then the executive vice-president, director, and stockholder of Perkins Manufacturing Company. . . Said checks and each of them showed on their face that the funds represented thereby belonged to petitioner's ward, George H. Haslam. . . Said defendant bank then knew, or had reasonable cause to know, that neither defendant Mulherin nor Perkins Manufacturing Company had personally any such sums as represented by said checks." The defendant bank profited by the transactions in question, "in that such amount of said bonds were not salable at any figure remotely approaching their nominal or face value to any one else, and, further, in that Perkins Manufacturing Company was not at any of said times then able to pay its debts to defendant bank, and never subsequently became able to do so, and was placed in bankruptcy, owing large sums to said Georgia Railroad Bank, greatly exceeding $21,000. Except as expressly hereinafter stated, neither petitioner, nor its ward, nor any one else on behalf of either of them, have ever received, or been tendered anything of value, because of or resulting from the cash expended or the bonds delivered. . . Defendant bank, as pledgee of said bonds, with the express or implied consent of the pledgor thereof, Perkins Manufacturing Company, sold said bonds for the total value of twenty-one thousand dollars ($21,-000) to defendant J. Harold Mulherin, with full knowledge at such time that J. Harold Mulherin was using the funds of his ward, George H. Haslam, to make such purchases. Defendant bank, at the times of such sales, knew that guardians in general were not, and that this guardian in particular was not, authorized to make investments of this character with funds belonging to the ward's estate. Defendant bank knew, in fact, that such purchases were illegal and unlawful investments of the funds of said ward, and said defendant bank was likewise charged by law with such knowledge. Said defendant bank, by knowingly aiding and assisting defendant J. Harold Mulherin in such misconduct and in such

misuse of the funds of the estate of said ward, depleted the assets of said ward by the amount stated, and defendant bank profited itself by said amount. The entire proceeds of such sales were applied by said bank to the payment of inadequately secured debts due it by Perkins Manufacturing Company, a corporation owned and operated by the Mulherin family, and in which defendant J. Harold Mulherin, the guardian so misusing such funds, was vitally interested. Subsequent to such illegal and unlawful acquisition of said bonds by defendant Mulherin from defendant bank, and prior to the appointment of your petitioner as successor guardian, defendant Mulherin disposed of said bonds. Your petitioner is informed and believes that defendant Mulherin surrendered said bonds to the Perkins Manufacturing Company for its unsecured note, and subsequently surrendered to the said Perkins Manufacturing Company said unsecured note for an equivalent face amount of the preferred stock of Perkins Manufacturing Company, which stock at the time of said exchange was, ever since has been, and is now absolutely and utterly worthless. Petitioner doubts whether said preferred stock was ever properly authorized or issued by Perkins Manufacturing Company, but petitioner has been tendered an alleged stock scrip purporting to represent such preferred stock by defendant Mulherin, and petitioner has refused to accept such tender. . . From the best information available, petitioner alleges that the only amounts which the estate of petitioner's ward has received because of or resulting from said illegal and unlawful transactions consists of interest received at the rate of seven per cent. (7%) per annum to the 27th day of November, 1929, on $10,000 from January 12, 1927, on $2000 from April 6, 1927, and on $9000 from May 25, 1928. Defendant Mulherin at no time or place applied for or received any approval or ratification from any court or judge of said illegal and unauthorized misuse of the funds of said ward's estate. Petitioner for and on behalf of said ward repudiates and disaffirms the purported investment in such bonds as an illegal, unauthorized, and wrongful misuse of trust funds," and sues for the sum of $21,000, "with interest as allowed by law." The quoted allegations were contained in the first count, and, as we construe them, were intended to charge an unauthorized investment of the minor's funds, with the defendant bank as seller.

The allegations of the second count were substantially the same,

except that the transactions were treated as a use of the minor's funds to liquidate in part an indebtedness owed to the defendant bank by the manufacturing company. The allegations in each count were sufficient to establish a misapplication of funds by the guardian Mulherin, and also to show the liability of the defendant banking company as one who knowingly aided and assisted in such misapplication. "Any guardian, in his discretion, may invest any funds of his ward in his hands in stocks, bonds, or other securities issued by this State. In every such case his return shall set forth the time of such purchase, the price paid, and the name of the person from whom purchased." Civil Code (1910), § 3070. "Executors, administrators, guardians, and trustees may invest trust funds in stocks, bonds, or other securities issued by this State, bearing lower rate of interest than seven per cent. per annum, and shall, in the settlement of their accounts on the funds so invested, be chargeable with no greater interest than that received from the State: Provided, that such executor, administrator, guardian, or trustee shall, within thirty days after such investment, make a return to the ordinary of the amount and character of the bonds purchased and the price paid." § 3764. "Any trustee holding trust funds may invest the same in stocks, bonds, or other securities issued by this State, making a true return of the price paid, and time of purchase. Such investments shall be free from taxation so long as held for the trust estate. Any other investments of trust funds must be made under an order of the superior court, either in term or granted by the judge in vacation, or else at the risk of the trustee." § 3763. "The guardian can not borrow money and bind his ward therefor, nor can he, by any contract *other than those specially allowed by law, bind his ward's property*, or create any lien thereon." [Italics ours.] § 3074. "The purchaser from a trustee, with notice actual or constructive of the trust, holds as trustee for the beneficiaries; if the purchaser be bona fide and without notice, the purchaser holds the property freed from the trust." § 3762. "The beneficiary of a trust estate may follow the funds wherever they can be traced, and at his option may affirm or reject an unauthorized investment by the trustee." § 3768. "All persons aiding and assisting trustees of any character, with a knowledge of their misconduct, in misapplying assets, are directly accountable to the person injured." § 3784. "When assets are misapplied and can

be traced in the hands of persons affected with notice of the misapplication, the trust attaches still to the assets, and equity will aid in restoring them to their legitimate purpose." § 3785. Mulherin could not invest the funds of his ward in the bonds of the Perkins Manufacturing Company without an order of the superior court, and the petition alleges that no such order was ever granted; nor could he as guardian under any circumstances apply the funds in his charge to pay a debt of the manufacturing company. So, in any view of the case, a misappropriation was clearly alleged. The checks were not drawn upon an account standing in the name of the guardian and were not signed merely by Mulherin as guardian. On the contrary, the account upon which the checks were drawn stood in the name of the ward, and the name of the ward was signed as the drawer by Mulherin, guardian. This statement will show that the transactions under consideration do not fall within the provisions of the law as stated in Michie's Code, § 2366(188), Ga. L. 1919, pp. 135, 209, sec. 42, to the effect that whenever any agent or legal representative, as a guardian, shall deposit money in a bank to his credit as an individual or as such agent or other fiduciary, the bank shall be authorized to pay the amount of such deposit or any part therof upon the check of such agent or fiduciary, signed with the name with which the deposit was entered. See *McRitchie* v. *Atlanta Trust Co.,* 170 *Ga.* 296 (3) (152 S. E. 834). The allegations in the present case also make inapplicable the statement in *American Trust & Banking Co.* v. *Boone,* 102 *Ga.* 202 (29 S. E. 182, 40 L. R. A. 250, 66 Am. St. R. 167), to the effect that "when a trustee deposits money in a bank, the bank has a right to assume that the money so deposited will be applied by the trustee to the proper purposes under the trust, and acting under this assumption it may lawfully pay the checks drawn by the person depositing the money, whether signed in his representative capacity or not." The following principle, however, as stated in the same decision, does apply: "If it [the bank] actively aid the trustee in misappropriating the fund, and especially if it participate in the misappropriation, and receive the fruits of such misappropriation by obtaining payment of a debt due it by the trustee in his individual capacity, the bank would be liable to the true owners of the fund for the amount thus wrongfully appropriated by it to its own uses." The checks involved in this case showed upon their

face that they were drawn upon funds of the ward, and that they were payable to a person who had no right to receive such funds, whether in payment of a debt due to the payee by another person or for the purchase of bonds held by the payee against a private corporation, unless, in case of purchase, the investment was approved by the superior court. The circumstances of the transactions were sufficient to put the defendant banking company, as payee, on *actual notice* of the illegality involved, if the checks were tendered in payment of the debt of the manufacturing company, and were sufficient to put such payee on *inquiry* in case of a proposed purchase, from the payee, of the bonds of that company.

As to the second of these theories, the only question which would seem to require discussion is whether the defendant bank should have inquired as to the granting of an order by the superior court authorizing such investment. Since a guardian is in effect a special agent of the law to manage the estate of a person non sui juris, it is incumbent upon all persons dealing with him to examine his authority. Civil Code (1910), § 3595. "Notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, is equivalent to knowledge, in fixing the rights of parties." § 4530. A guardian is a trustee, and, as shown above, the purchaser from a trustee with notice, either actual or constructive, of the trust holds as trustee for the beneficiaries. Clearly, one selling to a trustee would be subject to the same principle. If Mulherin as guardian undertook to invest the funds in his charge in bonds of a private corporation without an order of the superior court, he was acting without authority of law, and a subsequent guardian will not be limited to an action for such damages as the ward may have sustained; but in such case the latter guardian would be authorized, if not bound, to repudiate the transaction en toto and to sue for the amount so unwarrantably invested. One who aids and assists a guardian in misapplying assets may be held liable upon proof that he actually knew of such misapplication, or upon proof of such facts as would have excited the attention of an ordinarily prudent person and put him on inquiry. In the latter circumstances, ignorance would be attributable to negligence and equivalent to knowledge. Whether or not the allegations in the present case were sufficient to show actual

knowledge, it appears from the facts stated that it was the duty of the bank to make some move to ascertain the truth, and that in such event it would have discovered that the investment was about to be made without an order of court, and was thus unauthorized. Counsel on both sides have cited many decisions by courts of other States; but we think it is unnecessary to resort to outside authorities to determine the question of liability, under the facts alleged. The provisions of the Code and the principles enunciated in previous adjudications in this State should leave no doubt as to the sufficiency of the petition upon that question. See, in this connection: *Shivers* v. *Palmer*, 14 *Ga.* 342; *Manning* v. *Manning*, 61 *Ga.* 138, 141; *Carmichael* v. *Foster*, 69 *Ga.* 372, 382; *Grimsley* v. *Grimsley*, 79 *Ga.* 397 (3) (5 S. E. 760); *Alspaugh* v. *Adams*, 80 *Ga.* 345 (9) (5 S. E. 496); *Howard* v. *Cassels*, 105 *Ga.* 412 (31 S. E. 562, 70 Am. St. R. 44); *Anderson* v. *Foster*, 112 *Ga.* 270, 273 (37 S. E. 426); *Rogers* v. *Dickey*, 117 *Ga.* 819 (45 S. E. 71); *Citizens & Southern Bank* v. *State*, 151 *Ga.* 696 (4) (108 S. E. 161); *Clark* v. *Clark*, 167 *Ga.* 1 (144 S. E. 787); *Burkhalter* v. *Peoples Bank*, 175 *Ga.* 744 (165 S. E. 749); *Dickey* v. *Sweeney*, 16 *Ga. App.* 559 (85 S. E. 766); *Mobley* v. *Phinizy*, 42 *Ga. App.* 33 (155 S. E. 73).

In view of the similarity of a guardian to one authorized to act only as a special agent, the present case should be readily distinguished from *Georgia Casualty Co.* v. *McRitchie*, 45 *Ga. App.* 697 (166 S. E. 49), which involved a sale of corporate stock by a wife to her husband without an order of court, and presented the question whether under the facts of the case the corporation could assume that the transaction was based upon a proper court order, in absence of knowledge to the contrary. Under the allegations made in the present case, the defendant bank was the actual opposite party in the transactions with the former guardian, and, having actual or constructive knowledge of the trust, accepted checks drawn by the minor through the guardian, either in part payment of a debt due by a third person, or for the purchase-money of securities which the guardian was not authorized to buy, the bank being in its own right the payee and the final recipient of the funds. The case might perhaps be different if the bank had handled the checks merely as a collecting agent or in some other relation than what is shown by the petition. But this is not a matter for deter-

mination in the present case, and we express no opinion as to what should be the result in circumstances foreign to the instant record.

■ He who would have equity must do equity, and give effect to all equitable rights in the other party respecting the subject-matter of the suit. Civil Code (1910), § 4521. Does the petition show that the plaintiff trust company has complied with this rule? This question is raised by one ground of general demurrer, the contention being that the plaintiff trust company has not made a sufficient offer to restore the fruits of the unauthorized transactions. It appears from the allegations that the former guardian received interest on the bonds for a certain period which antedated the appointment of the plaintiff as guardian. It may be inferred from the petition that the plaintiff received the amount of such interest, but it did not accept from the former guardian any of the securities obtained by the latter from the defendant banking company. The bonds were exchanged by the former guardian for preferred stock in the Perkins Manufacturing Company, which stock is now worthless. By its amendment the plaintiff alleged that "other than the interest, . . neither the petitioner nor any one else on behalf of George H. Haslam has received or been tendered anything of value because of or resulting from the cash expended or the bonds delivered, as set forth in . . the original petition. No tender of such interest is made, as such amount would be at once due petitioner. Petitioner hereby consents to the delivery by defendant Mulherin to defendant bank of the [preferred] stock referred to, . : and renounces and disclaims any and all interest in such stock." "A party is not obliged to return that which he will be entitled to retain, as a condition precedent" to a recovery in equity. *Collier* v. *Collier,* 137 *Ga.* 658 (3) (74 S. E. 275, Ann. Cas. 1913A, 1110). If the allegations be true, the plaintiff is entitled to recover many times the amount which it may have received as interest, and equity will not require the useless procedure of returning a part which should be included in the larger sum which it seeks to recover. *Farnell* v. *Brady,* 159 *Ga.* 209 (125 S. E. 57); *Ellis* v. *Ellis,* 161 *Ga.* 360 (3) (130 S. E. 681). Nor, under the facts stated, was the plaintiff under a duty to recover the bonds or to accept the preferred stock in lieu thereof for the purpose of tendering the same to the plaintiff. The petition does not show that the plaintiff has failed to do equity.

■ The defendant demurred to the allegation in the first count, as to the sale of the bonds by the defendant bank to the former guardian, contending that the allegation was a mere conclusion of the pleader. There is no merit in this contention. *Hall* v. *Wingate,* 159 *Ga.* 630 (1 *g*) (126 S. E. 796); *Domin* v. *Brush,* 174 *Ga.* 32 (161 S. E. 809); *Charleston &c. Railway Co.* v. *Lyons,* 5 *Ga. App.* 668 (2) (63 S. E. 862). The petition alleged that the "defendant bank knew in fact that such purchases were illegal and unlawful investments of funds of said ward, and said defendant bank was likewise charged by law with such knowledge." This was the equivalent of an averment that the bank knew or ought to have known that the investments were unauthorized; and in view of the petition as a whole it was not subject to special demurrer upon any of the following grounds: (a) a mere conclusion of the pleader; (b) it does not appear in what manner or under what law the defendant is so chargeable; (c) "said allegation is contrary to law." Where knowledge, actual or constructive, is an essential condition to a recovery, and the petition alleges facts to show a duty to know or to inquire on the part of the defendant, an averment that the defendant knew or should have known is not objectionable as a conclusion. *Fulton Ice &c.* v. *Pece,* 29 *Ga. App.* 507 (2) (116 S. E. 57), and cit. As indicated in division 4 above, the allegations were sufficient to show a duty on the part of the defendant bank to examine the authority of the former guardian, and in all the circumstances the allegations as to knowledge were sufficient to withstand the several grounds of special demurrer. Cf. *Morris* v. *Mobley,* 171 *Ga.* 224 (5) (155 S. E. 8); *Shirley* v. *Standard Oil Co.,* 172 *Ga.* 191 (157 S. E. 267).

The petition did not give the names of the officers or representative of the bank through which it dealt with the former guardian in the transactions in question. The petition alleged that the name of such representative of the bank "lies peculiarly within the knowledge" of the bank and "is not known by petitioner." · The petition was not subject to special demurrer upon the ground that it did not designate the particular person who represented the bank in the transactions under consideration. In *Georgia Engineering Co.* v. *Horton,* 135 *Ga.* 58 (2) (68 S. E. 794), it was held: "Where a petition alleged that the plaintiffs sold lumber to a corporation of the county where the suit was brought, at a certain price and to

be delivered at certain times, and sought to recover judgment for damages on account of a breach of the contract arising from a refusal to receive the lumber sold, it was not subject to special demurrer on the ground that it did not allege the name of the officer or agent of the defendant with whom the contract was made."

■ The petition contained numerous allegations whereby it was sought to show knowledge on the part of the defendant bank. From what has been said, many of these averments were unnecessary, the petition being highly redundant in this respect. None of such allegations were subject to demurrer, however, as being conclusions of the pleader, or for lack of specification, since there was a sufficient statement of fact to show a duty on the part of the bank to make investigation. But the amendment contained the following allegation which was too vague and indefinite to meet the requirements of good pleading: "Petitioner further avers, on information and belief, that said bank, through said representatives, in the exercise of proper diligence, either knew, or should have known, in 1927 and 1928, not only the facts set forth herein, but many and numerous other facts and circumstances unknown to petitioner, which either did or should have convinced said bank of at least two things: first, that no trust funds of any kind or description should have been invested in bonds of Perkins Manufacturing Company; and, second, that it was most desirable from its own viewpoint for the defendant bank to secure payment to itself of the debts due it by Perkins Manufacturing Company as promptly as practicable, although it might be wise from time to time to increase such debt in order to obtain additional collateral for itself." This part of the amendment was demurred to upon the ground that the "many and numerous other facts and circumstances were not set out, and that the allegations with respect thereto were too general and uncertain to present an issuable defense, and for this reason should be stricken." This ground of demurrer was good and should have been sustained.

■ The petition as amended alleged the following: "Whether by coincidence, or by the insistence of said defendant bank, petitioner does not know; but petitioner alleges that the trustees for the second issue of bonds of Perkins Manufacturing Company were in fact H. D. Beman and J. Lee Etheredge, said Beman being the executive vice-president of defendant bank, and said Etheredge a

vice-president and member of the finance committee of defendant bank, and also president of Realty Savings & Trust Company," the company last named being the bank on which the checks delivered to the defendant bank were drawn. These averments were demurred to as being "altogether irrelevant and immaterial and not germane to the cause of action sought to be pleaded." The court erred in not sustaining this ground of demurrer. It does not appear that either Beman or Etheredge represented the bank in the transactions with the former guardian, or that their connection with the bonds as grantee in the deed of trust had any bearing upon such transactions. In *Habersham Bank* v. *Merrill,* 157 *Ga.* 695 (2) (122 S. E. 37), it was held: "A corporation is not to be charged with notice of facts of which its vice-president acquires knowledge while dealing in his private capacity and in his own behalf with third persons; nor is knowledge on his part thus acquired imputable to the corporation, when, acting through another official, it deals with him at arm's length as with any other individual representing himself alone." See also *Strickland Co.* v. *Union Banking Co.,* 42 *Ga. App.* 645 (3) (157 S. E. 115), and cit. The quoted allegations appear to have been totally irrelevant, and they should have been stricken.

■ The petition as amended alleged that in February, 1934, before the filing of the present suit, the superior court of Chatham County entered the following decree, in a suit in favor of the plaintiff as guardian of George H. Haslam against the former guardian and United States Fidelity & Guaranty Company: "That the United States Fidelity & Guaranty Company shall transfer, set over, assign and convey to the Liberty National Bank & Trust Company of Savannah, as guardian of the person and property of George Harold Haslam, all rights which it has or may hereafter have against the Georgia Railroad Bank & Trust Company by reason of any matter or thing connected with or growing out of the facts set forth in the suit of the Liberty National Bank & Trust Company of Savannah, as guardian of the person and property of George Harold Haslam, against J. Harold Mulherin and the Georgia Railroad Bank & Trust Company, which suit is now pending in this superior court, and that the entire recovery which the Liberty National Bank & Trust Company of Savannah, as guardian of the person and property of George Harold Haslam, may make from the

said Georgia Railroad Bank & Trust Company and from any other person or from any property shall belong solely to the Liberty National Bank & Trust Company of Savannah, as guardian of the person and property of George Harold Haslam, and that the United States Fidelity & Guaranty Company shall have no rights of any nature, kind, or description therein." The petition further alleged that the United States Fidelity & Guaranty Company "has complied with the terms of said decree." The defendant demurred to these allegations upon the following among other grounds: (1) "Said allegations attempt to add a new and distinct cause of action not expressly authorized by law." (2) "The proceedings in said paragraph mentioned are not sufficiently described or identified; for that it does not appear from said amendment, or the original petition of file in this cause, what the issues were in said proceeding to which United States Fidelity & Guaranty Company was a party, what relationship, if any, the claims or demands sought to be asserted in said proceedings bore to the alleged cause of action in this action, and said allegations with respect to such other proceedings are entirely too vague, general, and indefinite, and lack the particularity required by law to give this defendant sufficient notice to prepare an issuable defense with respect thereto, and should be stricken." These grounds of demurrer were properly taken, and should have been sustained.

Each count of the petition was sufficient to state a cause of action, and the grounds of general demurrer were properly overruled. The court erred, however, in not sustaining certain grounds of special demurrer, as indicated in the foregoing opinion. Since we have held that stated grounds of special demurrer were good, it is unnecessary to mention or pass upon other special grounds aimed at the same allegations.

*Judgment reversed. All the Justices concur, except Gilbert, J., disqualified.*